Lewis MITCHELL

v.

Dr. Harold BOSLOW, Director, et al.

Civ. A. No. 70-675.

United States District Court,
D. Maryland.

March 30, 1973.

Charles P. Howard, Jr., Baltimore, Md. (court-appointed), for plaintiff.

James G. Klair and Donald R. Stutman, Asst. Attys. Gen. of Maryland, Baltimore, Md., for defendants.

## MEMORANDUM AND ORDER

NORTHROP, Chief Judge.

Plaintiff, Lewis Mitchell, an inmate of the Patuxent Institution, has instituted suit under the Civil Rights Act of 1871, 42 U.S.C. § 1983, pursuant to 28 U.S.C. § 1343(3), against Dr. Harold Boslow, Director of the Patuxent Institution,

Forrest Calhoun, Assistant Director, and Officer Elijah Marner, seeking $100,000 in general damages and $250,000 in punitive damages.

Mitchell has made, in essence, the following allegations:

1) That on March 7, 1970, he was attacked by two other inmates, Paul Clark and Charles Dryer, and stabbed with a "sharpened metal rod" six times, sustaining substantial injuries.

2) That he, Mitchell, is black and that the assaulting inmates are white. That Officer Marner deviated from the normal policy of racial segregation of work crews by letting Mitchell work alongside two white inmates.

3) That the defendants were negligent in allowing Clark and Dryer to work with Mitchell, because these inmates were known to be hostile to blacks, with a propensity to violence.

In a Memorandum and Order dated April 21, 1971, this Court dismissed plaintiff's Complaint for failure to state a federal claim. The basis for that decision was that mere negligence is not actionable under 42 U.S.C. § 1983. The United States Court of Appeals for the Fourth Circuit reversed and remanded, Mitchell v. Boslow, No. 71–1513 (February 7, 1972), stating that "if a 'bad motive . . .' is alleged, this might be sufficient to state a federal claim."

The Court stated:

If, on remand, the petitioner can establish racial bias and malice motivating his dangerous work assignment, there would be a violation of the equal protection clause. Moreover, permitting a known dangerous inmate close association with a person of race he has previously repeatedly harmed, and failing to prevent his possession of a dangerous weapon might together constitute "institutional treatment of such character or consequences as to shock general conscience or to be intolerable in fundamental fairness in violation of the Eighth Amendment."

■ ■ A trial-type evidentiary hearing was held in this Court on March 12th through 14th, 1973. Plaintiff was appointed counsel who undertook this assignment without remuneration. After a careful review of all of the testimony presented, this Court concludes that plaintiff's claim for relief must be denied.

42 U.S.C. § 1983 provides:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

This provision was designed to provide a comprehensive remedy for deprivation of federal or constitutional rights. E. g., Smith v. Hampton Training School of Nurses, 360 F.2d 577 (4th Cir. 1966). Plaintiff's claim is for negligence. In order to recover plaintiff must elevate his negligence claim to a constitutional level. Judicial authorities are generally in agreement as to the burden of proof that is required to be met by the plaintiff. Negligence is actionable under § 1983 only if "bad faith oppressive motive" is shown. Williams v. Field, 416 F.2d 483, 486 (9th Cir. 1969); accord, Puckett v. Cox, 456 F.2d 233 (6th Cir. 1972), Kent v. Prasse, 385 F.2d 406, 407 (3rd Cir. 1967), Jenkins v. Meyers, 338 F.Supp. 383 (D.Ill.1972), Parker v. McKeithen, 330 F.Supp. 435 (E.D.La.1971).

Numerous factual allegations are not in dispute. The defendants agreed that Mitchell was attacked and stabbed by Clark and Dryer. What was in dispute was defendant's motivation in connection with the incident. Mitchell would have this Court believe that the defend-

ants acted wilfully and maliciously to promote the attack on Mitchell.

To support his claim plaintiff called on five fellow inmates as witnesses to testify in his behalf. Two of these witnesses, Earl 10X Fitzgerald, and Lecelle Gallop, testified that while they were on Tier M–1, the tier where Lewis Mitchell, the plaintiff, was confined, they observed the attack on Mitchell. The records of the Patuxent Institution later revealed that these two inmates apparently perjured themselves because neither one was confined in Tier M–1 on March 7, 1970, the day of the incident. Fitzgerald was first placed in Tier M–1 on April 15, 1970 and Gallop on March 30, 1970.

The inmate witnesses testified that it was the Institution's policy to segregate work crews because of the racial tension existing on the tier; that Officer Marner wilfully disregarded that policy and maliciously placed Mitchell, a black inmate, on the same work crew with Paul Clark and Charles Dryer, white inmates with known violent propensities towards blacks.

Tier M–1 is the administrative segregation unit of Patuxent Institution. It is a protective custody tier for those who refuse to cooperate with the Patuxent personnel, and whose behaviour pattern is characterized by inability to get along with others. The general policy of the Institution is integration. However, according to Mr. Forrest Calhoun, Associate Director, work crews on Tier M–1 are often segregated to avoid outbreaks of racial hostility among inmates who are particularly hostile and aggressive.

Officer Marner, by plaintiff's own admission, was rather new to Tier M–1 in March of 1970. One of the witnesses, Eugene Grove, an inmate confined in the same cell block, stated that he does not remember seeing Marner on Tier M–1 prior to March 7, 1970. It cannot be said that Marner was motivated by racial bias in assigning Mitchell to work on the sanitary detail with Clark and Dryer for he, Marner, is also black. Moreover, assignments to a particular sanitary detail are voluntary, remunerated with pecuniary compensation. Mitchell could have refused to join the work crew on March 7, 1970, yet he chose not to do so. He was not, in any way, coerced or forced to work by Officer Marner on that day. Dr. Francis Carney, a Patuxent staff psychologist, testified that Mitchell complained about being placed in a cell block where only one other inmate was black and the others were white. It is possible, and the word *possible* must be stressed, that there was some negligence by the Patuxent authorities and Marner in allowing Mitchell to work with Clark and Dryer. That certainly does not amount to such gross conduct which constitutes bad faith and oppressive motivation. *See* Williams v. Field, *supra*; Puckett v. Cox, *supra*; Kent v. Prasse, *supra*.

Of the five inmate witnesses who testified in Mitchell's behalf, three were not even confined in Tier M–1 on March 7, 1970. They had no personal firsthand knowledge of the incident. Gallop and Fitzgerald have already been previously discussed. In addition, Charles Angus Allen, who said he doesn't remember "if I was on Tier M–1" on that date, and the records reflect he was not on that tier, testified. His attitude was belligerent, his demeanor disrespectful. His recitation amounted to a verbal attack upon the Institution as a whole. Mitchell's own credibility is doubtful in view of his choice to have these inmates testify.

Plaintiff's witnesses presented conflicting testimony about the existence of a Blue Memorandum directing segregation of work crews on Tier M–1. One of the inmates, Lecelle Gallop, testified that he was familiar with the Tier and had never seen such a Memorandum. In addition, it was shown that official memoranda were never blue and that it was not the policy of Patuxent to leave any official Memoranda in plain view for the inmates. It is highly doubtful

that such a Memorandum, in fact, existed. Based on the whole testimony and the apparent perjury of some of the plaintiff's witnesses, this Court cannot help but conclude that the Blue Memorandum was probably a fabrication of the plaintiff and his witnesses.

The following *facts* emerged from the testimony. On March 7, 1970, Mitchell was asked by Officer Marner whether he wished to perform sanitary detail work with Clark and Dryer. He responded affirmatively, of his own free will. Mitchell was subsequently, suddenly and unexpectedly, assaulted by Clark and Dryer. Within a very short period, Officers Conner and Janeszko restrained the assaulting inmates. Mitchell was taken to the Institution's physician where he was treated for his superficial wounds.

The plaintiff and his witnesses would, in effect, have this Court believe that the defendants maliciously promoted the altercation, when Mitchell could have refused to join that sanitary work crew, when Marner was not aware of Clark and Dryer's tendencies or intentions, and when Clark and Dryer were prevented by the Guards from inflicting serious injuries on Mitchell.

While access to a judicial forum must be available to every individual, whether imprisoned or not, it should not be abused at the whim or caprice of those who invoke its jurisdiction. This Court spent three days listening to testimony. Plaintiff was appointed counsel who worked on this case gratuitously. The Attorney General of Maryland had to expend time, money, and effort to rebut plaintiff's case. Moreover, the State fully cooperated in this matter to the express satisfaction of petitioner's counsel by producing all the available files, documents, and witnesses requested by the petitioner. And plaintiff's case amounted to a fabricated charge of malicious wrongdoing on the part of the defendants.

The Patuxent Institution is an institution for defective delinquents. Its inmates, or patients, are necessarily persons with definite anti-social behaviour, most of whom are criminal recidivists. *See* Md.Ann.Code art. 31B. It is difficult to control such a group. Yet, Patuxent has performed remarkably well in its rehabilitation of hardened criminals. It "represents an enlightened and progressive experiment aimed at rehabilitating . . . . Based on the figures available from its brief operation, the recidivism rate from Patuxent, which deals with a population composed entirely of confirmed recidivists, is lower than the combined rate for all of the penal institutions in the United States." Tippett v. State of Maryland, 436 F.2d 1153, 1157 (4th Cir. 1971).

The Patuxent environment is to some extent hostile and aggressive. The atmosphere is tense and the social milieu at times violent. Documentary evidence in the record demonstrates that the supervisory personnel at Patuxent are constantly being subjected to verbal as well as physical abuse by many inmates. Incessant derogatory shouts directed at the officers pervade the hallways, and fecal matter aimed at the guards flies through the air. Problems are bound to arise. Racial tension is one such problem. To deal effectively with racial tension and similar problems segregation units with close supervision have been set up. Isolated incidents of assaults by inmates upon each other do occur. The incident in the case at bar was one. To say that such an incident was a product of a bad faith oppressive motive would be to imply fictitious malice to the personnel in charge. The defendants do not deny that Mitchell was attacked by Clark and Dryer. They do deny any wrongdoing in connection with the incident. The testimony of the witnesses reveals that after voluntarily joining the work crew Mitchell was attacked suddenly and unexpectedly; that the altercation was broken up by the guards within a very short period of time and that Mitchell's wounds were, by admission of his own counsel, superficial. The defendants acted in good

faith and in no way attempted to subject Mitchell to attack by the other inmates. The weapon which Clark used was a small metallic object which could have been very well hidden. Failure to find it did not constitute such gross negligence as to amount to malice and oppression.

In Williams v. Field, *supra*, plaintiff alleged that he was attacked and injured by a fellow inmate. Because the plaintiff inmate there failed to demonstrate "bad faith oppressive motive," relief was denied. The Court stated that "[m]ere negligent failure to act, standing alone," is insufficient and that "more than an isolated incident of negligent failure to protect must be alleged." 416 F.2d at 485. In Puckett v. Cox, *supra*, the state penitentiary was charged with permitting an "insane" prisoner to roam within the prison and providing him with access to a dangerous instrument, which led to the attack and injury of the plaintiff. Finding a lack of "bad faith oppressive motive," the Court denied relief. Failure of a parish jail to take adequate precautions to prevent an inmate with dangerous propensities from using lighter fluid to burn the plaintiff, another inmate, was held not actionable under § 1983, again, in the absence of bad faith oppressive motive. Wood v. Maryland Casualty Co., 322 F.Supp. 436 (W.D.La.1971); *See also* Parker v. McKeithen, *supra*.

In McCray v. State of Maryland, 456 F.2d 1, 5–6 (1972), the Fourth Circuit Court of Appeals stated "that a section 1983 action may be based on negligence when it leads to a deprivation of rights. *See* Jenkins v. Averett, . . . Carter v. Carlson . . . Whirl v. Kern . . . ." These cases relied upon by that Appellate Court, involved gross negligence and flagrant abuse of discretion outside the context of prison administration. In Jenkins v. Averett, 424 F.2d 1228 (4th Cir. 1970), a state police officer was charged with shooting an eighteen year old black youth. In Carter v. Carlson, 447 F.2d 358 (D.C. Cir. 1971), the defendant police officer apparently

arrested the plaintiff without probable cause and beat him severely. In Whirl v. Kern, 407 F.2d 781 (5th Cir. 1969), cert. denied, 396 U.S. 901, 90 S.Ct. 210, 24 L.Ed.2d 177 (1969), a sheriff detained the plaintiff in jail for nine months after dismissal of the indictments against him. And finally, in *McCray, supra*, the plaintiff was barred access to a judicial forum by the Clerk of the Court.

Plaintiff, Mitchell, has failed to prove that the attack upon him was a result of bad faith oppressive motive or racial bias and malicious intent. He has failed to demonstrate any conduct on the part of the defendants that would shock the conscience and amount to cruel and unusual punishment. *See* Williams v. Field, *supra*, Church v. Hegstrom, 416 F.2d 449 (2nd Cir. 1969). Moreover, it was shown at this hearing that Patuxent Institution is undertaking a good faith effort to rehabilitate its inmates and control its population with close supervision. Under these circumstanes, no violation of constitutional magnitude can be found for which relief by this Court could be granted.