**John SCHWEIKER**

v.

**Officer GORDON, Individually and as a police officer of the City of Philadelphia, John Doe, Individually and as a police officer of the City of Philadelphia, Joseph O'Neill, Individually and as Police Commissioner of the City of Philadelphia, the City of Philadelphia.**

Civ. A. No. 77-2706.

United States District Court,
E. D. Pennsylvania.

Dec. 19, 1977.

Michael S. Bomstein, Philadelphia, Pa., for plaintiff.

Gerald T. Clark, Asst. City Sol., Philadelphia, Pa., for defendants.

## OPINION

LUONGO, District Judge.

This is a "police brutality" case. The plaintiff, John Schweiker, contends that on December 12, 1976, he was beaten by an unidentified police officer named Gordon and other policemen he can't name or identify ("John Doe(s)"). In this action, which is based on the Civil Rights Act of 1871 and Pennsylvania common law, he seeks damages against the policemen, Philadelphia Police Commissioner Joseph O'Neill, and the City of Philadelphia. He also seeks to enjoin O'Neill from continuing to employ the defendant police officers. Liability of the City and O'Neill is based on *respondeat superior* and, in addition, O'Neill's liability is based on his alleged negligence in testing, training, and supervising Philadelphia police officers and failure to remove the defendant policemen from their jobs after learning of their "violent propensities." O'Neill and the City have moved to dismiss for lack of jurisdiction and failure to state a claim upon which relief can be granted.

At the outset, it is unclear to me whether the complaint asserts federal civil rights claims against O'Neill and the City. After setting forth various factual averments in the complaint, plaintiff asserts his legal claims under two headings. The first, entitled "FEDERAL CLAIMS," states:

"E.  *FEDERAL CLAIMS*

32.  All of the allegations set forth in paragraphs 1 through 31 above are hereby incorporated as though fully set forth below.

33.  By intentionally harming the plaintiff, and not coming to his aid while harm was being inflicted, officers Doe and Gordon violated plaintiff's right to be protected from unwarranted searches and seizures as promised by the Fourth Amendment, his right to be free of cruel and unusual punishments as granted by the Eighth Amendment, his right to the due process of law under the Fourteenth Amendment, and other rights generally vested in citizens by the Ninth and Thirteenth Amendments.

34.  In abridging plaintiff's rights as alleged in paragraph 33 hereof, defendants violated 42 U.S.C. § 1983."

The remaining legal claims are set forth under the second heading, entitled "PENDENT STATE CLAIMS:"

"F.  *PENDENT STATE CLAIMS*

35.  Paragraphs 1 through 34 hereof are incorporated hereby as though set forth at length below.

36.  Officers Doe and Gordon's beating of plaintiff Schweiker was tortious and constituted an unlawful assault and battery.

37.  Defendants Does' failure to rescue the plaintiff was gross negligence.

38.  Defendant Gordon is liable to John Schweiker for false arrest and malicious prosecution.

39.  Defendant O'Neill's acts as specified above were negligent and in reckless disregard of plaintiff's rights as as [sic] citizen, exhibiting a patent lack of the prudence and care which is reasonably expected of a person in his high office.

40.  Defendants Doe and Gordon are liable to the the [sic] plaintiff for the negligent and intentional infliction of emotional distress.

41.  Defendants Doe and Gordon are liable to the plaintiff under Pennsylvania law and for abridgement of his rights under the state constitution.

42.  The defendant, City of Philadelphia, is responsible for all of the above described acts and omissions of defendants under the doctrine of *respondeat superior.*"

From the wording of these paragraphs of the Complaint, it appears to me that plaintiff is asserting his federal civil rights claims only against the police officers. He only refers to O'Neill and the City in asserting his pendent claims under Pennsylvania law. Viewing the case in this light, the motion to dismiss the claims against O'Neill and the City turns solely on whether the court should exercise pendent jurisdiction in

this case. As I state below, I have concluded that pendent jurisdiction should not be exercised over the state law claims against O'Neill and the City.

In their briefs and at oral argument, the parties have assumed that federal civil rights claims have been asserted against all of the defendants. To avoid any misunderstanding as to my disposition of this case, I shall make the same assumption. In this posture, the case presents issues identical to those discussed in my opinions in *Jones v. McElroy*, 429 F.Supp. 848 (E.D.Pa.1977), and *Milburn v. Girard [Milburn I]*, 429 F.Supp. 865 (E.D.Pa.1977). I shall not repeat my discussion of those issues in this case, but instead will briefly summarize the grounds on which I base my decision, noting some of the arguments that have been raised since I filed my opinions in *Jones* and *Milburn I*.

First, claims cannot be asserted against the City of Philadelphia under the Civil Rights Act of 1871, 42 U.S.C. § 1983, because the City is not a "person" within the meaning of that statute. *Jones, supra*, at 853–54, citing *City of Kenosha v. Bruno*, 412 U.S. 507, 93 S.Ct. 2222, 37 L.Ed.2d 109 (1973); *Moor v. County of Alameda*, 411 U.S. 693, 706–10, 93 S.Ct. 1785, 36 L.Ed.2d 596 (1973); *Monroe v. Pape*, 365 U.S. 167, 187–92, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961). In addition, federal civil rights claims for damages cannot be asserted against the City directly under the Fourteenth Amendment to the United States Constitution because, *inter alia*, recognition of such a cause of action would not comport with the statutory scheme enacted by Congress for the enforcement of Fourteenth Amendment rights. *Jones, supra*, at 855–60; *accord, Kostka v. Hogg*, 560 F.2d 37 (1st Cir. 1977); *McKnight v. Southeastern Pennsylvania Transportation Authority*, 438 F.Supp. 813 at 816 & n. 4 (E.D.Pa.1977) (discussing recent Third Circuit decisions).

Second, civil rights liability cannot be imposed on O'Neill or the City (assuming that the City could be held liable at all) if it is based merely on a *respondeat superior* theory. *Jones, supra*, at 863–64. This is the majority view and appears to have been adopted by the Third Circuit in *Hampton v. Holmesburg Prison Officials*, 546 F.2d 1077, 1082 (1976). Of course, even if *respondeat superior* were generally applicable in civil rights cases, that theory would not apply to O'Neill since the defendant policemen were not his employees. *Milburn I, supra*, at 867. I am aware of the confusion which has recently surrounded this vicarious liability issue. Some courts have distinguished *Hampton* and other decisions refusing to impose vicarious liability in civil rights cases on the reasoning that those decisions involved attempts to impose liability on persons such as O'Neill, *i. e.*, persons who were not the employers of the alleged wrongdoers. *See, e. g. Santiago v. City of Philadelphia*, 435 F.Supp. 136, 147–49 (E.D.Pa. 1977); *Culp v. Devlin*, 437 F.Supp. 20, 23–24 (E.D.Pa.1977). I note, however, that the Third Circuit's opinion in *Hampton* did not apply this rationale and instead explicitly stated that "in § 1983 suits liability may not be imposed on the traditional standards of *respondeat superior*." 546 F.2d at 1082. Nevertheless, the Third Circuit itself recently added to the confusion with language in its opinion in *Mahone v. Waddle*, 564 F.2d 1018, 1021 (3d Cir. 1977), suggesting that *respondeat superior* is only inapplicable to § 1983 claims against *municipalities* and that this rule results solely from the fact that Congress has excluded municipalities from liability in actions under the 1871 Civil Rights Act. *See generally Milburn v. Girard [Milburn II]*, 441 F.Supp. 184, 189–191 & n. 6 (E.D.Pa.1977). I am not sure what fine distinctions, if any, will be drawn when this issue is finally decided. In the interim, I shall abide by my decision in *Jones* and have no difficulty holding that O'Neill and the City cannot be held vicariously liable for § 1983 claims in this case. Although I need go no further in this case, I hasten to add that I disagree with the view (*see Santiago, supra*, at 148) that a broad rule refusing to apply vicarious liability in civil rights actions is a rule without reason unsupported by any policy in its favor. As I noted in *Jones, supra*, at 864,

**1138**

and stated in *Milburn II, supra,* at 190, the rule is "based on the view that the civil rights statutes embody a congressional policy of personal accountability for wrongful conduct which should not lightly be supplanted in favor of judicial notions as to adequacy of remedies." *See, e. g., Veres v. County of Monroe,* 364 F.Supp. 1327, 1331–32 (E.D.Mich.1973), *aff'd mem.,* 542 F.2d 1177 (6th Cir. 1976).

■ Third, the civil rights claims against O'Neill cannot be based on mere negligence, with no showing of intent. *Jones, supra,* at 861–63. I recognize that, like the vicarious liability question, this issue has been subject to considerable disagreement. The Supreme Court has held that an intent to deprive a constitutional right is necessary to impose liability for certain civil rights violations. *See Estelle v. Gamble,* 429 U.S. 97, 104–06, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976) (due process claim based on freedom from cruel and unusual punishment); *Village of Arlington Heights v. Metropolitan Housing Development Corp.,* 429 U.S. 252, 97 S.Ct. 555, 50 L.Ed.2d 450 (1977) (state entity's denial of equal protection); *Washington v. Davis,* 426 U.S. 229, 96 S.Ct. 2040, 48 L.Ed.2d 597 (1976) (federal denial of right to equal treatment guaranteed by Due Process Clause of Fifth Amendment). Some courts have viewed these cases as based not on a broad general rule that only intentional civil rights violations are action-

able, but as merely turning on specific rules applicable to the specific constitutional right violated in each case. *See, e. g., Santiago, supra,* at 150–51; *Culp, supra,* at 22–23. *See also McKnight, supra,* at 829. Perhaps the Supreme Court will provide some guidance on this question when it decides *Procunier v. Navarette,* No. 76–446, *argued,* 46 U.S.L.W. 3260 (U.S., Oct. 11, 1977), which deals with alleged negligent interference with the rights of prisoners.[1] Assuming that the degree of culpability necessary for an actionable civil rights claim does vary according to the specific constitutional right involved, I adhere to my view that federal liability in this type of case—*i. e.,* an action for deprivation of plaintiff's liberty interest in personal security without due process of law[2]—cannot be based on simple negligence.

Discussing the right to personal security, the Supreme Court recently noted that "the contours of this historic liberty interest in the context of our federal system of government have not been defined precisely." *Ingraham v. Wright,* 430 U.S. 651, 673, 97 S.Ct. 1401, 1413, 51 L.Ed.2d 711 (1977) (footnote omitted). In that case, it discussed the right in the context of an intentional infliction of bodily restraint and physical punishment. The cases cited by the Court in the course of its discussion also dealt with intentional conduct. *See id.* at 673–74 & n. 42, 97 S.Ct. 1401; citing *Rochin*

1. According to United States Law Week, the first of three questions presented by the petitioner in *Navarette* is "Does negligent failure to mail certain outgoing prisoner mail give rise to cause of action under 42 U.S.C. § 1983?" 46 U.S.L.W. 3085 (Aug. 30, 1977). The lower court's treatment of the issue may be found in *Navarette v. Enomoto,* 536 F.2d 277, 281–82 (9th Cir. 1976), *cert. granted,* 429 U.S. 1060, 97 S.Ct. 783, 50 L.Ed.2d 776 (1977). Certiorari was limited to the first question presented in the petition.

2. There has been little in-depth analysis of the constitutional basis for police brutality actions. The cases arise under the Due Process Clause of the Fourteenth Amendment, which prohibits deprivation of a person's life, liberty, or property by a state without due process of law. The "liberty" which is deprived in these cases is not the right to freedom from cruel and unusual punishment since that right only applies to

persons convicted of crimes. *See Ingraham v. Wright,* 430 U.S. 651, 664–71, 97 S.Ct. 1401, 51 L.Ed.2d 711 (1977). Instead, it has been recognized that that liberty is the right of an individual to be free from unjustified intrusions on his personal security. *See, e. g., Johnson v. Glick,* 481 F.2d 1028, 1032–33 (2d Cir.), *cert. denied,* 414 U.S. 1033, 94 S.Ct. 462, 38 L.Ed.2d 32 (1973). What degree of culpability is required to accomplish such a deprivation is the issue discussed in the text of this opinion. Another question of some difficulty is the meaning of "due process of law" in this context. Rather than turning on a denial of procedural due process, it appears that these cases are more comfortably based on a lack of substantive due process, the contention being that plaintiff's liberty was denied arbitrarily and irrationally without legitimate law enforcement justifications. *See generally McKnight, supra,* at 825.

*v. California,* 342 U.S. 165, 72 S.Ct. 205, 96 L.Ed. 183 (1952); *Skinner v. Oklahoma,* 316 U.S. 535, 541, 62 S.Ct. 1110, 86 L.Ed. 1655 (1942); *Jacobson v. Massachusetts,* 197 U.S. 11, 25 S.Ct. 358, 49 L.Ed. 643 (1905); *ICC v. Brimson,* 154 U.S. 447, 449, 14 S.Ct. 1125, 38 L.Ed. 1047 (1894); *Union Pacific R. R. v. Botsford,* 141 U.S. 250, 251–52, 11 S.Ct. 1000, 35 L.Ed. 734 (1891). In *Hampton v. Holmesburg Prison Officials, supra,* the Third Circuit considered a claim that prison guards had afforded inadequate medical care to a federal pretrial detainee. Because the plaintiff had not been convicted of a crime, the prohibition of cruel and unusual punishment was not implicated (*Ingraham, supra,* 430 U.S. at 664–71, 97 S.Ct. 1401; *see Hampton,* 546 F.2d at 1079), and it thus appears that the case was decided in the context of the right to personal security. *See Hampton, supra,* at 1079–80. Nevertheless, the Court adopted the standard applied in cruel and unusual punishment cases, holding that "[t]o establish a constitutional violation, the indifference [to the plaintiff's serious medical needs] must be deliberate and the actions intentional." *Id.* at 1081. A plaintiff can, of course, bring an action for negligence in the state courts of Pennsylvania, and I believe that the availability of that avenue for redress is an important practical consideration to be viewed in defining the scope of the federal right to personal security "in the context of our federal system of government." *Cf. McKnight, supra,* at 829–830 (discussing similar consideration with regard to state-created right to reputation). The availability of a state negligence action coupled with the fact that the right to personal security discussed in the above-cited cases has historically been linked to intentional conduct convince me that federal liability in this case cannot be based on simple negligence.

Fourth, in pleading a civil rights claim, the "short and plain statement of the claim showing that the pleader is entitled to relief" (Fed.R.Civ.P. 8(a)) must contain specific factual allegations in support of the plaintiff's right to recovery. *Jones, supra,* at 863; *McKnight, supra,* at 830. As I stated in *Flesch v. Eastern Pennsylvania Psychiatric Institute,* 434 F.Supp. 963, 973 (E.D.Pa.1977):

"The specific pleading rule does not require the plaintiff to plead all the evidence in support of her claim; it merely requires the pleading of allegations sufficient to assure the court that the claim has some basis in fact. [Citations omitted.] If the claim merely parrots the language of the Civil Rights Act or sets forth a theory of recovery with no factual allegations in its support, dismissal is proper."

Plaintiff's allegations with regard to defendant O'Neill are as follows:

"25. At all times pertinent hereto defendants Gordon and Doe were officers of the Philadelphia Police Department and were acting as agents, servants and employees of defendants O'Neill and the City of Philadelphia.

26. Upon belief the plaintiff avers that defendants Gordon and Doe have prior records of unlawful assaults upon citizens during the course of employment as police officers, which records are contained in their personnel files, in the files of the police Board of Inquiry, and in the storage banks of computers, all of which are in the possession and control of defendant O'Neill.

27. Upon belief, plaintiff avers that defendant O'Neill failed to test Doe and Gordon properly for their psychological suitability for police work, and was negligent in the training and supervision of the said officers.

28. Upon belief, plaintiff avers that Mr. O'Neill has repeatedly and knowingly failed to enforce the laws of the Commonwealth of Pennsylvania and the regulations of the Philadelphia Police Department relative to the use of force and deadly force by city police officers, and thereby created an atmosphere of lawlessness in which officers commonly employ excessive and illegal force and violence.

29. Plaintiff believes, and therefore avers, that defendant O'Neill knew or

should have known of the violent propensities of officers Doe and Gordon, and should have either removed them from the police force or transferred them to administrative jobs.

30. Defendant O'Neill was or should have been aware of the unlawful acts and practices that had become a pattern at the time of plaintiff's beating and which beating resulted from the failure to enforce laws and regulations as set forth above.

31. At all times pertinent hereto the individual defendants were acting under color of state law and within the scope of their employ as officers of the Philadelphia Police Department."

Some of these averments go beyond accusations of mere negligence and assert knowing and intentional conduct by O'Neill. It may be that, if O'Neill knew that these policemen were engaged in a continuous practice of unconstitutional conduct and nevertheless refused to take any action to rectify that situation, he could be held personally accountable for his intentional failure to prevent civil rights violations by these policemen. *See Santiago, supra,* 435 F.Supp. at 151–53 (discussing requirement of causal nexus to wrongful conduct of subordinates); *cf. Estelle v. Gamble,* 429 U.S. 97, 104–06, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976) (recognizing cause of action against prison officials for "deliberate indifference" to prisoners' serious medical needs); *Lewis v. Hyland,* 434 U.S. ——, ——, 98 S.Ct. 419, 54 L.Ed.2d 291 (1977) (Marshall, J., dissenting from denial of petition for certiorari). I do not believe that such an action may be maintained on the basis of these allegations, however.

■ The complaint asserts that the defendant police officers "have prior records of unlawful assaults upon citizens." Plaintiff has not alleged that the policemen have been criminally convicted or found civilly liable for their actions on any occasion; if they occurred at all, what plaintiff labels "unlawful assaults" may have been justifiable police actions subjectively characterized as "unlawful" by disgruntled complainants or, indeed, by plaintiff himself. The accusation is particularly questionable in light of the fact that plaintiff admits he is unaware of the identity of either of the policemen.[3] Plaintiff has shown no basis for his belief that they have prior records, and, in light of the absence of information as to their identity, it seems reasonable to require some factual basis for that belief. More to the point, plaintiff's averment that O'Neill had knowledge of this pattern of unlawful conduct is without factual averments in its support. Unless there had been an adjudication that a policeman acted wrongfully—a situation not alleged by plaintiff with regard to the past conduct of defendants in this case—it is highly unlikely that incidents involving a specific member of a police force the size of that of Philadelphia would come to the personal attention of the police commissioner.

I think that before he can assert a claim such as this, a plaintiff must plead more specific facts in its support. The allegations should disclose a closer link to the police commissioner than an unsupported suspicion that he may have been aware of some prior unspecified conduct of some of the policemen under his authority. I am aware, of course, that to some extent, the

---

**3.** At oral argument, counsel stated that no individual has as yet been identified as the "Officer Gordon" named in the complaint. Counsel for plaintiff stated that plaintiff obtained the name "Gordon" from a third person and has not been able to confirm it. With respect to defendant "John Doe," it is not clear from the complaint whether that is one policeman or many policemen. Paragraph 6(b) identifies "John Doe" as "all of the remaining police officers against whom liability is alleged herein, whose names, badge numbers and districts are currently unknown." Although plaintiff has alleged (with-

out support) that the defendant policemen are members of the Philadelphia Police Department, I note that the incident which forms the basis for this action occurred outside of Philadelphia in Montgomery County and that, according to ¶ 9 of the complaint, police arrived at the scene "from all directions." It has been suggested, therefore, that the policemen plaintiff has intended to sue may not even be members of the Philadelphia police force. For purposes of this motion, however, I shall assume that they are Philadelphia policemen.

lack of specific pleading results from the fact that more specific information cannot be provided without an opportunity for discovery. By the same token, however, an unsupported complaint against a public official should not be allowed to become a license to conduct a fishing expedition. It was to protect against such abuses, with the "considerable expense, vexation, and perhaps unfounded notoriety" which they bring to defendants, that the specific pleading rule was developed. *Valley v. Maule,* 297 F.Supp. 958, 960–61 (D.Conn.1968), *quoted with approval in Kauffman v. Moss,* 420 F.2d 1270, 1276 n. 15 (3d Cir.), *cert. denied,* 400 U.S. 846, 91 S.Ct. 93, 27 L.Ed.2d 84 (1970). Although they have not yet been identified, the policemen remain defendants in this action and, once plaintiff succeeds in identifying them, he may gain access to their personnel files through discovery. Should access to those files provide plaintiff with information which enables him to sufficiently allege a civil rights claim against O'Neill, plaintiff may amend his complaint to add O'Neill as a defendant. Upon consideration of the allegations in this complaint, however, the damage claim against O'Neill will be dismissed.

With regard to plaintiff's request for equitable relief, even assuming that it is based on the federal civil rights claims, I do not believe that plaintiff has stated a proper claim for an equitable remedy.[4] In his prayer for relief, plaintiff "requests the Court to enjoin defendant O'Neill from continuing to employ officers Doe and Gordon" and "prays the Court to order such other equitable relief as it may deem appropriate." Complaint ¶¶ 45, 48. Even if the factual averments in the complaint adequately allege a series of instances of misconduct by the defendant policemen, I know of no case which authorizes such federal judicial intervention into police personnel matters on the basis of such averments. *Cf. Rizzo v. Goode,* 423 U.S. 362, 377–80, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976) (principles

of federalism made it inappropriate for district court to "[inject] itself by injunctive decree into the internal disciplinary affairs of [the Philadelphia Police Department]"); *Lewis v. Hyland [Lewis II],* 554 F.2d 93 (3d Cir.) (following *Rizzo* ), *cert. denied,* 434 U.S. ——, 98 S.Ct. 419, 54 L.Ed.2d 291 (1977). *But cf. Lewis v. Kugler [Lewis I],* 446 F.2d 1343, 1349–52 (3d Cir. 1971) (decided prior to Supreme Court's opinion in *Rizzo* ).

In all cases—and especially where, as here, an injunction will require federal interference with state or local government administration—equitable relief must be specifically tailored to the specific violation shown. *Rizzo, supra,* 423 U.S. at 377–80, 96 S.Ct. 598. Although plaintiff has alleged that he was improperly treated by these policemen and has attempted to aver that the policemen engaged in other instances of wrongful conduct in the past, plaintiff has not asserted any "real and immediate threat of repeated injury" (*O'Shea v. Littleton,* 414 U.S. 488, 496, 94 S.Ct. 669, 676, 38 L.Ed.2d 674 (1974)) to himself at the hands of these defendants. I therefore do not believe that he has stated a "ripe" case or controversy as to future conduct of Gordon and Doe. *See Rizzo, supra,* 423 U.S. at 371–73, 96 S.Ct. 598; *O'Shea, supra,* 414 U.S. at 493–99, 94 S.Ct. 669; *cf. Lewis I, supra* (class action asserting repeated wrongful conduct directed toward identifiable class); *Santiago, supra,* 435 F.Supp. at 143–44 (class action asserting continuing conditions of cruel and unusual punishment). In this context, therefore, enjoining the continued employment of Gordon and Doe will serve no prophylactic purpose as to future injury and can only be justified as a punitive remedy against Gordon and Doe for their wrongful conduct in the past. Of course, even an isolated instance of police misconduct is a matter of grave concern deserving of a remedy. In cases such as this, however, past misconduct can be remedied by an award of compensatory damages

4. Insofar as the claim for injunctive relief applies to defendant City of Philadelphia, I assume without deciding that plaintiff may assert

such a claim directly under the Fourteenth Amendment. *See McKnight, supra,* at 816–817.

against the offending policemen and, upon a sufficient showing of personal culpability, against their superiors as well. In egregious cases, punitive damages are also available. *Basista v. Weir,* 340 F.2d 74, 84–88 (3d Cir. 1965). In light of the availability of this legal remedy and in deference to the considerations of federalism emphasized in *Rizzo,* I must conclude that only the strongest of cases would justify equitable intrusion into internal matters of police administration. Although the Philadelphia Police Department may well decide that the best way to deal with the serious problem of police brutality is to dismiss the offending policemen, I do not believe that I can impose such a solution on the Department on the basis of the facts alleged in this case. Plaintiff's claim for equitable relief therefore will be denied.

■■■ All that remain, therefore, are plaintiff's pendent state claims. I have expressed doubts as to my jurisdictional power to hear pendent claims against the City of Philadelphia in light of *Aldinger v. Howard,* 427 U.S. 1, 96 S.Ct. 2413, 49 L.Ed.2d 276 (1976). At least so long as the question of municipal liability directly under the Fourteenth Amendment remains open in this circuit, however, I apparently do have such power. *Gagliardi v. Flint,* 564 F.2d 112, 114–16 (3d Cir. 1977), *petition for cert. filed,* 46 U.S.L.W. 3323 (U.S., Nov. 7, 1977) (No. 77–657). Nevertheless, believing this to be a matter committed to my discretion (*see United Mine Workers v. Gibbs,* 383 U.S. 715, 725–27, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966); *cf. Mahone v. Waddle,* 564 F.2d 1018, 1025–26, 1037 (3d Cir. 1977)), I shall exercise that discretion by declining to hear the state claims against the City. As I explained in *Jones, supra,* 429 F.Supp. at 865:

> "Even assuming that I have [jurisdictional] power . . ., the municipal exclusion from liability and the dismissal of the civil rights claims against the City in these actions lead me to conclude that entertaining the state claims against the City under pendent jurisdiction would be an improper exercise of my discretion under *Gibbs,* which cautioned that 'if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well' (*Gibbs, supra,* 383 U.S. at 726, 86 S.Ct. at 1139 (footnote omitted))."

Similarly, because I am dismissing the civil rights claims against O'Neill, I shall decline to hear the state law claims against him. Finally, pendent jurisdiction will not be exercised over any state law negligence claims against the defendant police officers, for, as I stated in *Jones, supra,* at 864–65, the negligence theories which underlie all of these claims "are so inconsistent and incompatible with civil rights claims that they will serve to confuse the jury." I will retain jurisdiction over the pendent claims which seek recovery against the police officers for intentional torts.