Willie JONES, Calvin Byrd and
Arthur Lee Jones

v.

CITY OF PHILADELPHIA and Police
Department of Philadelphia.

Civ. A. No. 76–1476.

United States District Court,
E. D. Pennsylvania.

Oct. 30, 1979.

Ronald J. Bayer, Abraham A. Leizerwoski and Perry Stanton Block, Philadelphia, Pa., for plaintiff.

Paul R. Sacks, Asst. City Sol., Philadelphia, Pa., for defendant.

POLLAK, District Judge.

The question to be determined is the sufficiency of the amended complaint filed by Willie Jones, Calvin Byrd and Arthur Lee Jones against two defendants, the City of Philadelphia and the Police Department of Philadelphia.

The amended complaint, while not a model of precise pleading, seems to allege in substance the following: (1) on May 13, 1975, the three plaintiffs were "at Liberty Fair in Philadelphia and comporting themselves quietly and peacefully, when they were told to leave, and escorted out by the Defendant, Police Department of Philadelphia"; (2) all three plaintiffs thereupon got into the automobile belonging to plaintiff Arthur Lee Jones, whereupon "Defendent [sic] Police Department of Philadelphia threw a nightstick into the front window of the automobile and began to open fire upon the Plaintiffs"; (3) plaintiff Willie Jones was severely wounded and still has a bullet lodged in his chest; plaintiff Calvin Byrd suffered substantial injuries; and plaintiff Arthur Lee Jones' automobile was heavily damaged; and (4) all three plaintiffs were arrested without probable cause. Based on these alleged wrongs, the plaintiffs seek damages ranging in amount from $500,000 (Byrd and Arthur Lee Jones) to $1,000,000 (Willie Jones).

Relying on the federal question jurisdiction conferred on district courts by 28 U.S.C. § 1331, the amended complaint characterizes the plaintiffs' claims as causes of

action arising under the Fourteenth Amendment.[1] The same claims are also said to constitute state law causes of action with respect to which a district court otherwise validly seized of a case can, derivatively, exercise pendent jurisdiction.

The amended complaint does not invoke 42 U.S.C. § 1983 as a basis for plaintiffs' federal claims against Philadelphia and its Police Department. Nor does the amended complaint charge any individual defendants (whether police officers or others acting "under color of law"), under Section 1983 or otherwise, with involvement in or accountability for the events of May 13, 1975. Accordingly the only question of consequence placed in issue by the motion to dismiss is whether a violation of the Fourteenth Amendment by municipal officials confers on one injured thereby a cause of action against the municipality anchored not in Section 1983 (or some other civil rights statute) but in the Amendment itself.[2]

## I.

*Monroe v. Pape*, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961), declared that a municipality is not a "person" within the meaning of Section 1983, and hence not accountable in a federal court for the acts of municipal employees infringing upon federal constitutional rights, notwithstanding that the malfeasant employees are themselves suable under Section 1983 both at law and in equity. To ameliorate what was widely perceived as an anomalous immunity, federal courts commenced to find in the Constitution itself the municipal liability which, so the Supreme Court had held in *Monroe v. Pape*, the Congress of 1871 had not made provision for in adopting Section 1983. By analogy to the constitutional

cause of action judicially authorized in *Bivens v. Six Unknown Agents*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), several Courts of Appeals read into the Fourteenth Amendment at least some measure of municipal liability for the constitutional torts of municipal employees. (See *Jones v. City of Memphis*, 586 F.2d 622, 624 (1978) in which the Sixth Circuit collects rulings of the Second, Fourth, Fifth, Seventh, Eighth and Tenth Circuits). The scope of the liability imposed vicariously on municipalities by the Constitution did not, however, appear to be as broad as that imposed directly on municipal employees by Section 1983. As the Second Circuit, speaking through Chief Judge Kaufman, put the matter in its first *en banc* consideration of *Turpin v. Mailet*, 579 F.2d 152, 168 (1978): "This governmental culpability arises whenever the unconstitutional actions of employees are authorized, sanctioned, or ratified by municipal officials or bodies functioning at a policy-making level. We expressly decline to impose liability on a municipality, under a theory of *respondeat superior*, for each and every wrongful act undertaken by its workers."

Proceeding more cautiously than most other Circuits, the Third Circuit declined to decide whether the Fourteenth Amendment sanctioned suits against municipalities, but at the same time held that a complaint which posed such a federal claim sufficiently invoked federal question jurisdiction so as to empower a federal district court to pursue pendent state claims in a state (such as Pennsylvania) whose tort law makes municipalities liable for the torts of their employees. See *Patzig v. O'Neil*, 577 F.2d 841, 850–51 (1978).

1. The amended complaint also refers to the First, Fourth and Fifth Amendments, but it appears from the discussion in *Plaintiffs' Memorandum Contra Defendant's Motion to Dismiss* that the Fourteenth Amendment is conceived of by plaintiffs' counsel as the lynch-pin of the pleading.

2. The motion to dismiss also asserts that the Police Department has no corporate being independent of the City of Philadelphia and hence

cannot be sued. But since plaintiffs do not suggest that this lawsuit could be maintained against the Police Department if it fails against the City, this aspect of the motion to dismiss appears to pose a non-issue—or, more properly, a semantic issue which relates only to the proper caption for the case. Cf. *Oshiver v. Court of Common Pleas*, 469 F.Supp. 645, 647 n.1 (E.D.Pa.1979).

## II.

*Turpin v. Mailet*, the Second Circuit decision quoted above, was decided on June 5, 1978. On June 6, 1978, the Supreme Court, in *Monell v. Department of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), reexamined what Congress had wrought in 1871 and overturned *Monroe v. Pape*'s restrictive reading of Section 1983:

Our analysis of the legislative history of the Civil Rights Act of 1871 compels the conclusion that Congress did intend municipalities and other local government units to be included among those persons to whom § 1983 applies. Local governing bodies, therefore, can be sued directly under § 1983 for monetary, declaratory, or injunctive relief where, as here, the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers. Moreover, although the touchstone of the § 1983 action against a government body is an allegation that official policy is responsible for a deprivation of rights protected by the Constitution, local governments, like every other § 1983 "person," by the very terms of the statute, may be sued for constitutional deprivations visited pursuant to governmental "custom" even though such a custom has not received formal approval through the body's official decisionmaking channels. As Mr. Justice Harlan, writing for the Court, said in *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 167–68, 90 S.Ct. 1598, 1613, 26 L.Ed.2d 142 (1970): "Congress included customs and usages [in § 1983] because of the persistent and widespread discriminatory practices of state officials . . . . Although not authorized by written law, such practices of state officials could well be so permanent and well settled as to constitute a 'custom or usage' with the force of law."

On the other hand, the language of § 1983, read against the background of the same legislative history, compels the conclusion that Congress did not intend municipalities to be held liable unless action pursuant to official municipal policy of some nature caused a constitutional tort. In particular, we conclude that a municipality cannot be held liable solely because it employs a tort-feasor—or, in other words, a municipality cannot be held liable under § 1983 on a respondeat superior theory.

\* . \* \* \* \* \*

We conclude, therefore, that a local government may not be sued for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983.

436 U.S. at 690–91, 694, 98 S.Ct. at 2035–2036, 2038 (footnotes omitted).

## III.

Following its decision in *Monell*, the Supreme Court vacated the Second Circuit's judgment in *Turpin v. Mailet*, and remanded the case for reconsideration in the light of *Monell*. And the Supreme Court took the same action with respect to the Eighth Circuit's pre-*Monell* decision, *Owen v. City of Independence*, 560 F.2d 925 (1977), which, like *Turpin v. Mailet*, had found in the Fourteenth Amendment an implied cause of action against a municipality for the unconstitutional injuries done by municipal employees. On remand, both Courts of Appeal concluded that *Monell*'s expansion of Section 1983 to impose some liability on municipalities made an implied Fourteenth Amendment remedy unnecessary—especially where, as the Second Circuit noted, the "conditions" defining Section 1983 municipal liability were "essentially coextensive with those we imposed on the [Fourteenth Amendment] private right of action in *Turpin*." *Turpin v. Mailet*, 591 F.2d 426, 427 (1979). See *Owen v. City of Independence*, 589 F.2d 335, 337 (8th Cir. 1978).

Our own Court of Appeals has not had occasion, since *Monell*, to address the

question. But, given that Courts of Appeals which had hitherto found an implied constitutional cause of action have receded from that view in light of *Monell*, there seems every reason to suppose that our own Court of Appeals, in which the existence of a constitutional cause of action was an open question, will now hold, as my Brother Luongo has already held, "that, in light of *Monell*, a Fourteenth Amendment action may not be used to impose vicarious liability on a municipality . . . ." *Kedra v. City of Philadelphia*, 454 F.Supp. 652, 679 (E.D.Pa.1978). To find in the Fourteenth Amendment a cause of action merely duplicating the Section 1983 cause of action declared by *Monell* would be an exercise in redundancy. To find in the Fourteenth Amendment a cause of action which imposed on municipalities a heavier liability (e. g., a liability geared to *respondeat superior*) than that sanctioned by Congress in Section 1983 would be to disrespect Congress' authority and competence to fashion remedies for constitutional violations. Courts must be slow to conclude that Congress, by fashioning statutory remedies on behalf of one set of plaintiffs, has intended to foreclose judicial implication of remedies for would-be plaintiffs not dealt with by the legislation. *Davis v. Passman*, 442 U.S. 228, 99 S.Ct. 2264, 60 L.Ed.2d 846 (1979). But courts must be equally slow to conclude that Congress, in authorizing a particular class of plaintiffs to recover from a particular class of defendants under carefully prescribed circumstances, has not indicated that the legislative remedial scheme would be undercut by judicial sanctioning of a lawsuit of more generous contours between the same classes of plaintiffs and defendants. It would serve no useful purpose to authorize two indistinguishable causes of action, one statutory and one constitutional. And it would undercut the legislative function to find in the Fourteenth Amendment a cause of action broader in scope than, and to that extent incompatible with, the cause of action fashioned by Congress to redress violations of the Constitution, provided that the legislatively prescribed cause of action is reasonably commensurate with the constitutional wrong it is designed to remedy.

## IV.

For the foregoing reasons, the amended complaint, which invokes federal question jurisdiction solely on the basis of the Fourteenth Amendment, does not state causes of action against the City of Philadelphia or against its subordinate municipal agency, the Police Department. Accordingly, the amended complaint must be dismissed. Such dismissal is, however, without prejudice to the filing, within thirty days from the date of this Opinion and accompanying Order, of a new amended complaint. To be sure, the amended complaint as now drawn would not appear to support a Section 1983 claim against the City, as *Monell* defines such a claim. Nor does the amended complaint as now drawn identify potential individual defendants who might be proper targets of a suit arising under Section 1983. Whether there are additional facts which plaintiffs can in good faith allege which would support a viable amended complaint is a question which must abide the event. If plaintiffs do not file a new amended complaint within thirty days from today, their case against these defendants will be dismissed.