Gerald A. SHIREY, Jr. et al.

v.

BENSALEM TOWNSHIP et al.

Civ. A. No. 80–2428.

United States District Court,
E. D. Pennsylvania.

Nov. 21, 1980.

Gary Green, Neil A. Morris, Sidkoff, Pincus, Greenberg & Green, P. C., Philadelphia, Pa., John M. McClure, Doylestown, Pa., for plaintiffs.

Frank, Margolis, Edelstein & Scherlis, Richard A. Kraemer, Philadelphia, Pa., for Warminister Tp.

Richard R. Fink, Levittown, Pa., for Tullytown Borough and Police Chief Gaspar Favoroso.

William B. Moyer, Power, Bowen & Valimont, Doylestown, Pa., for Police Chief Raymond Voelker and Police Chief of Bristol Tp.

Richard B. Hardt, Detweiler, Hughes & Kokonos, Philadelphia, Pa., for Falls Tp. Bd. of Sup'rs and Falls Police Chief James Kettler, Individually.

Leonard B. Sokolove, Sokolove, Pechter, Stief & Waite, Bristol, Pa., Daniel J. Allan, Philadelphia, Pa., for Bristol Tp.

Richard M. Snyder, Bristol, Pa., for Bristol Borough and Police Chief Faragay Vincent.

Sondra K. Slade, West Chester, Pa., for Buckingham Tp. and Steven Daniels.

Henry F. Huhn, Bensalem, Pa., and Robert G. Hanna, Marshall, Dennehey, Warner, Coleman & Goggin, Philadelphia, Pa., for Bensalem Tp. and Police Chief Lawrence Michaels.

Peter J. Hoffman, Duane, Morris & Heckscher, Philadelphia, Pa., for Buckingham Tp.

Alan J. Davis, City Sol., Ralph J. Teti, Deputy City Sol., Philadelphia, Pa., for City of Philadelphia.

White & Williams, Peter T. Parashes, Richard M. Shusterman, T. A. Shovlin, Philadelphia, Pa., for Borough of Bristol.

Moskowitz, Zamparelli & Weiss, P. C., Stephen I. Weiss, Mindy M. Brook, Langhorne, Pa., for Falls Tp. and Police Chief James Kettler.

Guy T. Matthews, White, Matthews & Delaney, Langhorne, Pa., for Middletown Tp. and Police Chief Howard C. Shook.

## MEMORANDUM AND ORDER

NEWCOMER, District Judge.

The issue before the Court is the sufficiency of the Complaint filed by Gerald A. Shirey, Stephen McCullough, William R. Hamilton, and Donna L. Hamilton, against 9 municipalities, 6 police chiefs, and certain unknown John Doe defendants.

The complaint sets forth the following factual scenario: (1) on the evenings of June 23, 1979, and June 24, 1979, police officers and other agents of various municipalities in lower Bucks County unlawfully stopped and, in certain cases, brutalized citizens who were traveling in or through the area; (2) the alleged illegal activity was the product of a conspiracy of all defendants; (3) the alleged illegal acts took place within a two mile radius of Five Points, Bucks County; (4) numerous individuals were arrested on those evenings and charged under the Pennsylvania Crimes Code for disorderly conduct. Plaintiffs' complaint has been brought as a class action on behalf of all persons who were caused to suffer deprivation of their civil rights as a result of an unlawful conspiracy. Plaintiffs seek a declaratory judgment, injunctive relief and damages.

The action is brought pursuant to 42 U.S.C. § 1983, § 1985(3), and the First, Fourth, Fifth, Sixth, Eighth and Fourteenth Amendments. Jurisdiction is founded on 28 U.S.C. § 1331. In addition, plaintiffs identify causes of action arising under state law, for which they ask this Court to invoke pendent jurisdiction.

## I.

■ At the outset, we deal with plaintiffs' claims under 42 U.S.C. § 1985(3).[1] The Court has concluded that plaintiffs' § 1985(3) claim must be dismissed because no class–based discriminatory animus has or could be pleaded to satisfy the requirements of *Griffin v. Breckenridge*, 403 U.S. 88, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971), or its progeny in this Circuit. In *Griffin*, the Supreme Court defined the requirements of § 1985(3) as follows:

> [T]here must be some racial, or perhaps otherwise class–based, invidiously discriminatory animus behind the conspirators' action.

403 U.S. at 102, 91 S.Ct. at 1798.

In *Carchman v. Korman Corp.*, 594 F.2d 354 (3d Cir.) *cert. denied*, 444 U.S. 898, 100 S.Ct. 205, 62 L.Ed.2d 133 (1979) (denying tenant's organization the right to proceed under § 1985(3)), the Third Circuit held that a conspiracy to deny civil rights to a class under § 1985(3) must be based "upon 'immutable characteristics' for which the members of the class have no responsibility." 594 F.2d at 354. The Court, in *Carchman*, noted that the class at issue was not the victim of "historically pervasive discrimination." 594 F.2d at 356. Judge Luongo, in a recent case, required that the animus in a § 1985(3) case be based on "an immutable

---

1. Section 1985(3) of Title 42 provides:

 If two or more persons in any State or Territory conspire or go in disguise on the highway or on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws; or if two or more persons conspire to prevent by force, intimidation, or threat, any citizen who is lawfully entitled to vote, from giving his .support or advocacy in a legal manner, toward or in favor of the election of any lawfully qualified person as an elector for President or Vice–President, or as a member of Congress of the United States; or to injure any citizen in person or property on account of such support or advocacy; in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages, occasioned by such injury or deprivation, against any one or more of the conspirators.

characteristic resulting from an accident of birth for which a person bears no responsibility." *Marino v. Bowers*, 483 F.Supp. 765 (E.D.Pa.1980). Under the facts of the present case, plaintiffs are clearly not members of a group which has historically been the victim of discrimination. Plaintiffs are simply a group of individuals who, under the facts alleged, had the misfortune to be in a certain geographic area on the evenings of June 23, 1979 and June 24, 1979. Plaintiffs have pleaded no "class–based animus" as the term has been defined in this Circuit. Accordingly, plaintiffs' claim under § 1985(3) will be dismissed.

## II.

We next consider plaintiffs' claims under 42 U.S.C. § 1983.[2] Defendants' overall theory of liability is based on allegations of conspiracy. Plaintiffs simply allege that all defendants were acting pursuant to a common scheme when they deprived plaintiffs of their constitutional rights. Plaintiffs further allege, however, that defendant municipalities and police chiefs are liable on the additional ground that they either had knowledge of, or acquiesced in the unconstitutional actions of unknown police officers.

*Conspiracy*

■ At the outset we note that complaints in civil rights must be pleaded with factual specificity. *Hall v. Pennsylvania State Police*, 570 F.2d 86 (3d Cir. 1978); *United States v. City of Philadelphia*, 482 F.Supp. 1274, 1275–76 (E.D.Pa.1979). Vague and conclusory allegations will not survive a motion to dismiss. *Id.* The purpose of the specificity requirement is to assure that civil rights actions are not frivolously brought[3] and to enable the Court to assess whether the action may be meritori-

ous. Also, the complaint must be sufficiently specific to allow defendants to prepare a defense.

■ Plaintiffs allege that the municipalities, police chiefs, and unknown police officers conspired to commit a series of unconstitutional actions. Plaintiffs then list a series of factual allegations regarding the unlawful actions of all defendants, against individual plaintiffs. Plaintiffs, however, uniformly fail to identify individual defendants or individual acts of defendants. *See Negrich v. Hohn*, 379 F.2d 213, 215 (3d Cir. 1967) (Allegations of specific actions by "defendants" were insufficient because that court concluded that "all defendants could not have inflicted the beatings at the times and places indicated"). Plaintiffs' contention that the allegations of conspiracy eliminate the need to specifically allege the particular actions of individual defendants must fail. The allegations of conspiracy are, at best, conclusory. The pertinent language is as follows:

> Defendants acting pursuant to a common plan, design, instructions, orders, advice, permission, license and/or urging of other Defendants unlawfully, maliciously, intentionally, in a grossly negligent manner and/or negligently violated the rights of [the plaintiffs]. . . .

Numerous circuit courts have held that a conspiracy can be the basis for a § 1983 action, but conclusory allegations of a conspiracy cannot withstand a motion to dismiss. *See, e. g., Slotnick v. Staviskey*, 560 F.2d 31 (1st Cir. 1977), *cert. denied*, 434 U.S. 1077, 98 S.Ct. 1268, 55 L.Ed.2d 783 (1978); *Ostrer v. Aronwald*, 567 F.2d 551 (2d Cir. 1977). In *Ostrer*, the Second Circuit stated:

2. Section 1983 of Title 42 provides:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

3. The concern expressed by numerous courts is that frivolous actions may "cause defendants–public officials, policemen, and citizens alike, considerable expense, vexation and perhaps unfounded notoriety." *Kauffman v. Moss*, 420 F.2d 1270, 1276 n. 15 (3d Cir.), *cert. denied*, 400 U.S. 846, 91 S.Ct. 93, 27 L.Ed.2d 84 (1970), *quoting, Valley v. Maule*, 297 F.Supp. 958 (D.Conn.1968).

This Court has repeatedly held that complaints containing only "conclusory", "vague" or "general allegations" of a conspiracy to deprive a person of constitutional rights will be dismissed. [citations omitted]. Diffuse and expansive allegations are insufficient, unless amplified by specific instances of misconduct.... In this case, appellants' unsupported allegations, which fail to specify in detail the factual basis necessary to enable appellees intelligently to prepare their defense, will not suffice to sustain a claim of governmental conspiracy to deprive appellants of their constitutional rights.

567 F.2d at 553.

In the instant case, plaintiffs' allegations of conspiracy are devoid of any underlying factual basis. The conspiracy allegation amounts to little more than a series of diffuse and expansive allegations of a common plan. The requisite level of specificity, therefore, has not been met by this complaint.

*Existence of Governmental Policy or Custom*

Although plaintiffs contend otherwise, they appear to allege that the municipalities and the police chiefs are liable for the acts of individual police officers under a theory of respondeat superior. Plaintiffs' alternate theory is that the municipalities and police chiefs are liable because they knew of or acquiesced in illegal actions of individual police officers and failed to take corrective action. The following language is relevant in this regard:

... The Defendants which are municipalities, are responsible for the acts and omissions of their respective agents, servants and/or employees.

The Defendants, which are municipalities, knew, or should have known, or were deliberately indifferent to the fact that the John Doe Defendants, who were their servants, agents and/or employees had histories of violent propensities and/or were unfit for police work of this type and/or had been reported and/or cited and/or sanctioned in the past for violent acts committed upon citizens of the Commonwealth.

The Defendants, which are municipalities, are and were responsible for the overall training and conduct of their servants, agents and employees, including the John Doe Defendants, who as stated previously, committed the said acts of brutality upon Shirey and members of the class and the said municipality defendants intentionally, recklessly, and/or in a grossly negligent manner failed to train their said servants, agents and/or employees and as such acted intentionally, willfully, wantonly, recklessly, and/or with total indifference and disregard to the rights of the Plaintiff and the members of [the] class.

 It is well–established that municipal liability under § 1983 may not be based on a theory of respondeat superior. *Monell v. Department of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Plaintiffs' allegations of custom or policy must also fail. It is apparent that plaintiffs' complaint against the municipalities does not allege a governmental policy or custom with the requisite specificity to enable plaintiffs to survive a motion to dismiss. Under the standards articulated in *Monell*, "[n]egligence, whether conclusorily described as 'gross' or otherwise, is clearly insufficient. Indeed, even the 'deliberate act' of [an] ... official, absent the trappings of official policy or custom, will not serve as the basis for municipal liability under § 1983." *Jones v. City of Philadelphia*, 491 F.Supp. 284, 287 (E.D.Pa.1980).

The claims against the individual police chiefs are no stronger. Negligent supervision is not a basis for § 1983 liability. *Schweiker v. Gordon*, 442 F.Supp. 1134 (E.D.Pa.1977); *Jones v. McElroy*, 429 F.Supp. 848 (E.D.Pa.1977). In order to recover, a plaintiff must establish a higher level of personal culpability. "The cases suggest that relief may not be obtained against supervisors unless they have participated in the offending conduct or have knowledge of or acquiescence in the constitutional deprivation." *Santiago v. City of*

*Philadelphia,* 435 F.Supp. 136, 151 (E.D.Pa. 1977). As Judge Pollak noted in *Jones v. City of Philadelphia, supra* :

> The attempt to invoke a higher standard of culpability by the unelaborated use of the phrase 'gross and reckless negligence' will not salvage a claim the gravamen of which is inadequate training and supervision. Even if the term 'recklessness' is read as an implicit assertion of knowledge or acquiescence on the part of the supervisor, the bare assertion of knowledge, absent some factual recitation from which its source may be gleaned, will not insulate a civil rights complaint . . . from a motion to dismiss. (citations omitted).

In the present case, plaintiffs attempt to invoke a higher standard of culpability by the unelaborated use of the phrase "intentionally, recklessly and/or grossly negligent manner" or by alleging conspiracy. Plaintiffs in the most conclusory of terms, have asserted that defendant municipalities and police chiefs either had knowledge of or acquiesced in the illegal actions of unknown police officers at the Five Points location. The complaint fails to specifically describe the basis of plaintiffs' allegations of knowledge or acquiescence.[4]

In summary, plaintiffs' complaint is deficient in two areas: (1) It fails to identify specific acts of specific defendants. The specificity which exists in the complaint is limited to recitations of particular incidents of individual plaintiffs. The complaint is devoid of any allegations which would put individual defendants on notice of their alleged wrongdoing. All defendants are simply lumped together. Liability of municipalities, police chiefs and unknown police officers is based on unsupported allegations of conspiracy. The complaint fails to provide any underlying factual basis for the conspiracy allegation. (2) The complaint fails to identify any governmental policy or custom with the requisite specificity which would enable the Court to determine whether plaintiffs' allegations of defendants' custom or policy, i. e. indifference to violent propensities, sanctioning of past violent acts, and failure to train police officers, have any basis in fact. We cannot conclude from the complaint that defendants had knowledge of, or acquiesced in, the conduct of the offending "John Doe" police officers. Simply alleging that the conduct was done knowingly or intentionally, or that it was the product of a conspiracy, without factual underpinning, is insufficient to overcome a motion to dismiss. We are, of course,

**4.** The Court finds the case of *Schweiker v. Gordon,* 442 F.Supp. 1134 (E.D.Pa.1977) (per Luongo, J.) particularly instructive. In *Schweiker,* plaintiff alleged that he was beaten by unidentified police officers. Plaintiff further alleged that the officers were negligently trained and supervised by the police chief and the city. The Court found the complaint's allegations insufficient to maintain a cause of action. The allegations in *Schweiker* are similar to those in the present case. The following quote is especially pertinent:

> The complaint asserts that the defendant police officers "have prior records of unlawful assaults upon citizens." Plaintiff has not alleged that the policemen have been criminally convicted or found civilly liable for their actions on any occasion; if they occurred at all, what plaintiff labels "unlawful assaults" may have been justifiable police actions subjectively characterized as "unlawful" by disgruntled complainants or, indeed, by plaintiff himself. The accusation is particularly questionable in light of the fact that plaintiff admits he is unaware of the identity of either of the policemen. *Plaintiff has shown no basis*

> *for his belief that they have prior records, and, in light of the absence of information as to their identity, it seems reasonable to require some factual basis for that belief. More to the point, plaintiff's averment that [the police commissioner] had knowledge of this pattern of unlawful conduct is without factual averments in its support.* Unless there had been an adjudication that a policeman acted wrongfully—a situation not alleged by plaintiff with regard to the past conduct of defendants in this case—it is highly unlikely that incidents involving a specific member of a police force the size of that of Philadelphia would come to the personal attention of the police commissioner.
>
> I think that before he can assert a claim such as this, a plaintiff must plead more specific facts in its support. *The allegations should disclose a closer link to the police commissioner than an unsupported suspicion that he may have been aware of some prior unspecified conduct of some of the policemen under his authority.*
>
> (emphasis supplied)
>
> 442 F.Supp. at 1140.

aware that to a certain extent, "the lack of specific pleading results from the fact that more specific information cannot be provided without an opportunity for discovery. By the same token, however, an unsupported complaint against ... public official[s] should not be allowed to become a fishing expedition." 442 F.Supp. at 1140–41.

For the foregoing reasons, plaintiffs' complaint under § 1983 will be dismissed against all defendants.[5] Such dismissal is, however, without prejudice to the filing within twenty (20) days of an amended complaint. If plaintiffs do not file an amended complaint within twenty (20) days, their case against all defendants will be dismissed with prejudice.[5]

### III.

■ Plaintiffs have also raised constitutional claims under the First, Fourth, Fifth, Eighth and Fourteenth Amendments. As noted above, plaintiffs have alleged causes of action under § 1983 that are premised on constitutional claims. We believe, therefore, that allowing plaintiffs to maintain a direct cause of action under these amendments would be an exercise in redundancy. "Indeed, § 1983 was designed to afford plaintiffs a cause of action for constitutional violations on the part of local governmental bodies and other state officials." *Rogin v. Bensalem Township*, 616 F.2d 680 (3d Cir. 1980). Several courts in the district have held that to allow direct actions under the Fourteenth Amendment would merely duplicate the cause of action available under § 1983. *Kedra v. City of Phila.*, 454 F.Supp. 652 (E.D.Pa.); *Jones v. City of Phila.*, 481 F.Supp. 1053 (E.D.Pa.1979). In *Jones*, the court noted that:

"[I]t would serve no useful purpose to authorize two indistinguishable causes of action, one statutory and one constitutional. And it would undercut the legislative function to find in the Fourteenth Amendment a cause of action broader in scope than, and to the extent incompatible with, the cause of action fashioned by Congress to redress violations of the Constitution, provided that the legislatively prescribed cause of action is reasonably commensurate with the constitutional wrong it is designed to remedy."

481 F.Supp. at 1056.

We believe the Court's justification for declining to find a cause of action under the Fourteenth Amendment in *Jones* is equally applicable to the causes of actions under other Amendments enumerated in plaintiffs' complaint. We believe that § 1983 provides an effective statutory remedy for all of plaintiffs' claims. Accordingly, plaintiffs' claims brought directly under the Constitution will be dismissed.

### IV.

Plaintiffs have also challenged the constitutionality of Pennsylvania's disorderly conduct statute both on its face and as applied. 18 Pa.C.S.A. § 5503.[6] They seek an order

---

5. The Court does not reach the issue of whether the instant case presents an exception to the general rule disfavoring the use of "John Doe" to identify a defendant. *Gillespie v. Civiletti*, 629 F.2d 637 (9th Cir. 1980); *Gordon v. Leeke*, 574 F.2d 1147, 1152 (4th Cir. 1978). Our holding is based on plaintiffs' lack of specificity in pleading which is fatal to their claim whether or not they may name "John Doe" defendants.

6. The statute provides as follows:

(a) Offense defined. A person is guilty of disorderly conduct if, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he:

(1) engages in fighting or threatening, or in violent or tumultuous behavior;

(2) makes unreasonable noise;

(3) uses obscene language, or makes an obscene gesture; or

declaring the statute to be unconstitutional and enjoining defendants from further enforcement of it. For the purposes of this Count plaintiffs are best divided into three groups: those who have been prosecuted for disorderly conduct, those against whom prosecutions are currently pending, and those who have never been charged with the offense. The Court will deny both declaratory and injunctive relief to all plaintiffs.

The federal anti–injunction statute provides that a federal court "may not grant an injunction to stay proceedings in a state court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." 28 U.S.C. § 2283. One reason for the general prohibition is the doctrine that courts of equity will not act when the moving party has an adequate remedy at law or will not suffer irreparable harm if denied equitable relief. In the context of a criminal prosecution, the defendant is generally considered to have an adequate remedy at law because he may present his claims at trial. In addition, the inconvenience, cost, and anxiety of having to defend against a single prosecution are not alone considered "irreparable" in the equitable sense of the word. Hence, the defendant seeking to enjoin a pending criminal prosecution is unsuccessful because he is unable to satisfy either of these traditional prerequisites to injunctive relief. *Younger v. Harris*, 401 U.S. 37, 43, 91 S.Ct. 746, 750, 27 L.Ed.2d 669 (1971).

■■■ *Younger* gives a second, and "more vital," reason for denying equitable relief to the state criminal defendant:

> The notion of "comity," that is, a proper respect for state functions.... The National Government, anxious though it

may be to vindicate and protect federal rights and federal interests, always endeavors to do so in ways that will not interfere with the legitimate activities of the states.

*Id.* at 44, 91 S.Ct. at 750; *Huffman v. Pursue, Ltd.*, 420 U.S. 592, 601, 95 S.Ct. 1200, 1206, 43 L.Ed.2d 482 (1975). Nevertheless, *Younger* recognized that in exceptional circumstances a federal court could properly intervene in a pending state criminal prosecution–when irreparable injury is "both great and immediate," 401 U.S. at 46, 91 S.Ct. at 751, when there is a showing of "bad faith" or "harassment" by the state in bringing the prosecution, 401 U.S. at 49, 91 S.Ct. at 753, or when the state law is "flagrantly and patently violative of express constitutional provisions." 401 U.S. at 53, 91 S.Ct. at 755. While § 1983 has been held to be an Act of Congress falling within the "expressly authorized" exception of the anti–injunction statute, the considerations of equity and comity nevertheless come into play, and a federal court may not grant injunctive relief against a pending state criminal prosecution in a § 1983 action unless the plaintiff brings his case within one of the three *Younger* exceptions. *Mitchum v. Foster*, 407 U.S. 225, 243, 92 S.Ct. 2151, 2162, 32 L.Ed.2d 705 (1972). For similar reasons, the *Younger* doctrine is also applicable when the plaintiff seeks a declaratory judgment that a statute, under which he is currently being prosecuted, is unconstitutional. *Samuels v. Mackell*, 401 U.S. 66, 73, 91 S.Ct. 764, 768, 27 L.Ed.2d 688 (1971). Hence, the Court will deny injunctive and declaratory relief to those plaintiffs currently being prosecuted for disorderly conduct because they have failed to demonstrate any of the exceptional circumstances

---

(4) creates a hazardous or physically offensive condition by any act which serves no legitimate purpose of the actor.

(b) Grading. An offense under this section is a misdemeanor of the third degree if the intent of the actor is to cause substantial harm or serious inconvenience, or if he persists in disorderly conduct after reasonable warning or request to desist. Otherwise disorderly conduct is a summary offense.

(c) Definition. As used in this section the word "public" means affecting or likely to affect persons in a place to which the public or a substantial group has access; among the places included are highways, transport facilities, schools, prisons, apartment houses, places of business or amusement, any neighborhood, or any premises which are open to the public.

which would warrant this Court's intervention in a state criminal prosecution.[7]

 When seeking either declaratory or injunctive relief from future state prosecution when none is currently pending, the federal plaintiff must demonstrate the existence of an "actual controversy" within the meaning of Article III of the United States Constitution. *Steffel v. Thompson*, 415 U.S. 452, 458, 94 S.Ct. 1209, 1215, 39 L.Ed.2d 505 (1974); *Younger*, 401 U.S. at 41, 91 S.Ct. at 749. He must demonstrate a "credible threat of prosecution" rather than one which is "imaginative or speculative". *Babbitt v. United Farm Workers*, 442 U.S. 289, 298, 99 S.Ct. 2301, 2309, 60 L.Ed.2d 895 (1979); *Younger* at 42, 91 S.Ct. at 749. In the instant case plaintiffs merely allege in Paragraph 54 of the Complaint that "[t]here is a continuing threat that the said rights of the said members of the class, including plaintiff, will be violated in the future unless the Defendants are enjoined from said violations." Such conclusory allegations do not indicate the existence of a "credible threat of prosecution";[8] therefore, the Court must deny the requested relief.

### V.

Because we have dismissed plaintiffs' claims under § 1985(3), § 1983 and the First, Fourth, Fifth, Eighth, and Fourteenth Amendments, the Court will not retain pendent jurisdiction over the state claims asserted against defendants. See *Aldinger v. Howard*, 427 U.S. 1, 96 S.Ct. 2413, 49 L.Ed.2d 276 (1976).

7. At best, plaintiffs' Complaint hints at the possibility that the prosecutions are being brought in bad faith; however, only conclusory allegations are made.

8. For example, one plaintiff demonstrated that he had been prosecuted three times in two months for covering the state motto embossed on his license plate. An actual controversy was found to exist because of his expressed intent to continue covering the motto and the state's apparent intent to continue prosecution. *Wooley v. Maynard*, 430 U.S. 705, 97 S.Ct. 1428, 51 L.Ed.2d 752 (1977). In a second case

an anti–war leafleter was twice threatened with arrest if he did not leave a shopping center. He left on both occasions but his companion remained and was arrested. The Court found he had alleged facts sufficient to present a credible threat of prosecution at the time the Complaint was filed; however, it remanded the case to the District Court for a determination of whether the de–escalation of the Vietnamese conflict had so altered plaintiff's desire to leaflet that an actual controversy no longer existed. *Steffel*, 415 U.S. at 460, 94 S.Ct. at 1216.