Ezell **JENKINS**, Plaintiff,

v.

Edwin J. **MEYERS** et al., Defendants.

No. 71 C 825.

United States District Court,
N. D. Illinois, E. D.

Jan. 26, 1972.

John Henry Schlegel, Legal Aid Bureau, Chicago, Ill., for plaintiff.

William J. Scott, Atty. Gen. State of Illinois, Robert E. Davison, Asst. Atty. Gen., Chicago, Ill., for defendants.

## MEMORANDUM OPINION

MAROVITZ, District Judge.

This is a civil rights action brought by a prisoner at the Illinois State Penitentiary, Stateville Branch, against various prison officials arising out of Defendants' failure to mail a trial transcript to Plaintiff's attorney.

Plaintiff alleges that on August 31, 1970 he delivered the trial transcript in his case to Defendant Meyers, a clerk in the Record Office at Stateville to be mailed to his attorneys.

Plaintiff was subsequently informed by his counsel that the transcript never arrived. Plaintiff's repeated inquiries to prison officials as to the whereabouts of the transcript were allegedly met with indifference. On February 9, 1971, Defendant Meyers returned the transcript to Plaintiff but refused to inform him as to where the transcript had been in the interim and Plaintiff's request for an investigation was turned down.

As a result of these alleged acts Plaintiff contends that his rights under the First, Fourth, Sixth and Fourteenth Amendments have been violated; that his civil rights under 42 U.S.C. § 1983, have been violated; that he has lost a post conviction hearing and that his direct appeal was delayed and denied. He seeks injunctive relief and $10,000 in the actual and punitive damages. (Count I.)

(In Count II of Plaintiff's Second Amended Complaint he alleges that his transcript was seized from his person while he was on his way to his work assignment pursuant to a prison regulation forbidding possession of legal papers at job assignments and that as a result

of his resistance he was punished with one day in isolation and the loss of the privilege of attending two movies. Plaintiff alleging violations of his First, Fourth, Sixth and Fourteenth Amendment rights seeks an additional $5,000 in actual and punitive damages on this Count and injunctive relief. Pursuant to an agreement made at the time of the submission of the pre-trial order, the issue of liability under Count I of the Second Amended Complaint has been separated from the issue of relief under Count I and from all of the issues under Count II, for disposition on the basis of the facts stipulated to in the pre-trial order.)

In disposing of the issue of liability under Count I we must first determine the factual setting and then decide whether the acts involved are violations of the Civil Rights Act.

Defendants do not controvert the fact that the transcript was indeed delivered to them for forwarding to Plaintiff's counsel; that it was not forwarded as directed and that it did not again turn up until February of 1971. The dispute centers around the whereabouts of the transcript during that five-month period and how it came to be lost.

This Court is convinced that Defendants' version of the facts as substantiated by exhibits and other evidence is the true course of events that led to the disappearance of the record. Due to the large volume of mail handled by the prison record office, the transcript was *inadvertently* placed in an envelope along with some other papers addressed to Mrs. Rose Edmonds, the mother of another prisoner. Mrs. Edmonds, unaware that the misplaced documents were among the other papers correctly sent to her did not send them back until she returned her son's entire file. It was at this time that the error in regard to Plaintiff's transcript was discovered. Our factual finding, therefore, is that Defendants did not intend to deny or violate Plaintiff's constitutional right of access to the courts.

This factual conclusion, however, in view of various interpretations given the Civil Rights Act is not sufficient in itself to dispose of the issue in this case.

Assuming as we have that the documents were negligently handled, we must now decide whether mere negligence, such as the mailing of Plaintiff's transcript, is not actionable under the Civil Rights Act as Defendants argue or whether Plaintiff is correct in his position that under the Civil Rights Act the fact that the prison officials did not intend to deprive him of his unimpeded access to the courts is irrelevant since "improper motive" is not an element of a § 1983 suit.

Monroe v. Pape, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961) determined that 42 U.S.C. § 1983 "should be read against the background of tort liability that makes a man responsible for the natural consequences of his actions." 365 U.S. at 187, 81 S.Ct. at 484 and that specific intent to violate the rights protected by the Act is not necessary for a cause of action. Early cases took this to mean that a § 1983 cause of action was possible for all torts so long as the tortious act was done by individuals acting under color of state law. See Hardwick v. Hurley, 289 F.2d 529 (7th Cir. 1961). The later trend was to move away from this absolute position (see Cohen v. Norris, 300 F.2d 24 (9th Cir. 1962).

A great deal of debate centers on the question of whether "improper motive" must accompany an invasion of constitutional rights to make the violation actionable under § 1983.

The Seventh Circuit Court of Appeals in Joseph v. Rowlen, 402 F.2d 367 (1968), relied on by Plaintiff, rejected the notion that ulterior motive is a requisite of a § 1983 cause:

"Federal courts, including this one have expressed the policy view that sec. 1983 should not be construed to make cognizable in a federal court any and all false imprisonment causes of action against police officers where the

unlawfulness of the arrest is a violation of federal constitutional requirements. The formulae suggested at times for distinguishing causes of action which are cognizable in federal court from those which are not have usually required for a federal cause of action facts indicating flagrancy or an improper motive.

"One serious difficulty with such formulae is that there is nothing in the language of sec. 1983, or the fourth and fourteenth amendments as presently construed, on which to base such tests.

"Although the Supreme Court has found that certain defenses to a sec. 1983 cause of action exist, apparently by implication, they are defenses typical of tort causes of action. Thus common law defenses of legislative immunity and judicial immunity exist under sec. 1983. A police officer is not liable if he acted in good faith *and* with probable cause in making an arrest under a statute he believed to be valid even though the statute be later held invalid.

.    .    .    .    .  ) .

"In dealing with the questions whether a person is liable under sec. 1983 only if he acted with a specific intent to deprive a person of a federal right, and in deciding that such intent was not required, the Supreme Court said section 1983 'should be read against the background of tort liability that makes a man responsible for the natural consequences of his actions.' "

In *Rowlen,* a false arrest case, where the police officer claimed that he was not improperly motivated, the court held that a directed verdict in defendant's favor was in error given the fact that good faith under the circumstances of that case was not an adequate defense. The court distinguished Pierson v. Ray, 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967):

"Although the Supreme Court refers in *Pierson* to 'the defense of good faith

and probable cause', available to a police officer under sec. 1983, there is no suggestion that a police officer is entitled to a defense of good faith when he makes an arrest without a warrant and without probable cause.

"We conclude that under 42 U.S.C. sec. 1983, where a police officer makes an arrest which is unlawful under the federal constitution because made without a warrant and without probable cause to believe that the person arrested had committed or was committing an offense, sec. 1983 imposes on the officer a liability which is recoverable in federal court. Additional circumstances coloring the officer's action as flagrant or malevolent are not required."

In Whirl v. Kern, 407 F.2d 781 (5th Cir. 1969) also heavily relied on by Plaintiff, the court cites the Seventh Circuit trend as reflected in *Rowlen, supra,* to disregard motive as an element of a § 1983 offense. *Kern,* was a false imprisonment rather than a false arrest case, where the Plaintiff was detained in prison for nine months after charges against him had been dismissed because the sheriff in whose custody he was, was unaware of the dismissal. The sheriff's defense to plaintiff's § 1983 suit was that the Civil Rights Act applied only to reprehensible or improperly motivated conduct. The court held good faith not to be an adequate defense:

"Decisions of the Supreme Court have repeatedly noted that a complaint under the Civil Rights Act should not be dismissed for failure to state 'a specific intent to deprive a person of a federal right.' Monroe v. Pape, 1961, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492; Pierson v. Ray, 1967, 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288, 296. The Civil Rights Act, we are told, should be read 'against the background of tort liability that makes a man responsible for the natural consequences of his actions.' Monroe v. Pape, *supra.* We do not find in this language or in the language of the Act itself any intimation that an invasion of

constitutional rights unaccompanied by an improper motive lies beyond the reach of the Statute.

"We are supported in this view by the recent decision of the Seventh Circuit in Joseph v. Rowlen, 7 Cir. 1968, 402 F.2d 367. . . .

"Since Monroe v. Pape, supra, this Court has consistently avoided attaching any requirement of ulterior purpose or improper motive to the statement of a cause of action under 42 U.S.C.A. § 1983. (Citations omitted). Of course, when an essential element of the wrong itself under well established principles of tort law includes the demonstration of an improper motive as in malicious prosecution, Nesmith v. Alford, *supra,* [5 Cir.] 318 F.2d at 110, 121, 128 n. 34, then such principle becomes a part of sec. 1983. But the origin of such a requirement is in the common law of torts, not in the Civil Rights Act. In cases where tort law imposes no such burden upon the plaintiff, we are not persuaded that the burden should be judicially imposed under sec. 1983. We think it inconsistent to say in one and the same breath that a man is 'responsible for the natural consequences of his actions,' Monroe v. Pape, *supra,* 365 U.S. at 187, 81 S.Ct. at 484, 5 L.Ed.2d at 505, and that he is responsible only if his actions are improperly motivated.

"This treatment of the improper motive requirement appears in keeping with the Supreme Court's position on the availability of defenses under the Civil Rights act. As we read Pierson v. Ray, good faith and probable cause are defenses to an arrest not because of any language in § 1983, but because § 1983 must be read in a manner consistent with the background of tort liability.

"We see no reason why the improper motive requirement should not also be dependent upon the common law of torts. Nothing in the Civil Rights Act or in decisions of the Supreme Court

compels otherwise. In fact, the unmistakable trend of judicial decisions has been away from the encrustation of the Civil Rights Act with judicially created limitations. Whereas the Act was once rigidly limited to instances of systematic discrimination or physical brutality, in recent years courts have shown themselves increasingly willing to entertain suits under § 1983 where even improper motive is hard to find. Huey v. Barloga, N.D.Ill.1967, 277 F.Supp. 864; (citations omitted). In surveying this historical progression, we are, like the Seventh Circuit, impressed with the lack of justification for the improper motive requirement. We find no more basis for it in the language of the Act or in Supreme Court decisions than for the now rejected requirement of systematic discrimination. Cf. Cohen v. Norris, 9 Cir. 1962, 300 F.2d 24, 29–30.

. . . . . .

"The Supreme Court's use of the term 'neglect' and the expansive phrase 'or otherwise' appears to us directly contrary to the 'improper motive' requirement. Such language suggests that a federal forum is no less desirable for the inadvertent than for the malicious violation of constitutionally protected rights. Cf. Huey v. Barloga, N.D.Ill.1967, 277 F.Supp. 864."

In distinguishing the good faith defense of Pierson v. Ray, *supra,* the court differentiated between false arrest, the situation in Pierson, and false imprisonment, the circumstances in Kern.

"Pierson v. Ray and Monroe v. Pape were on their facts, false arrest cases and not false imprisonment cases. While it is certainly true that false arrest cases are often denominated actions for false imprisonment, *i. e., Pierson* and *Monroe,* false imprisonment deriving from an arrest and false imprisonment where no arrest has occurred are in substance quite different.

. . . . . .

"There can be no quarrel with the fact that 'good faith' in the circumstances

of an arrest is a necessary and historically validated defense. As said by the Supreme Court in *Pierson*, 'A policeman's lot is not so unhappy that he must choose between being charged with dereliction of duty if he does not arrest when he has probable cause, and being mulcted in damages if he does.' 386 U.S. at 555, 87 S.Ct. at 1218, 18 L.Ed.2d at 295.

"The reasons for this broad protection are clear. An arrest is often a stressful and unstable situation calling for discretion, speed, and on-the-spot evaluation. . . . "

■ The rule that we derive from all of these cases—a rule certainly adhered to by this Circuit—is that improper motive is not an element of a § 1983 action and that the Civil Rights Act must be read in a manner consistent with the background of common law tort liability which allows only for recognized tort defenses. Plaintiff would therefore have us find Defendants liable for its inadvertent act of incorrectly mailing the transcript although Defendants were merely negligent, on the theory that negligence is not a proper defense to a tort and thus cannot be a defense to a § 1983 action.

■ The short answer to Plaintiff's contentions in this case would be that the fundamental tort element of injury is here absent. Thus, even if all the other ingredients of a tort case are present and cognizable under the Statute including negligence (a point which we do not concede) Plaintiff could not succeed given the fact that he has not been injured by Defendants' acts. Under the Illinois Post Conviction Hearing Act (Ill.Rev.Stat. Ch. 38 § 122–1) a proceeding may be commenced at any time within twenty years of the final judgment and Plaintiff can therefore still proceed with his attempt to secure post-conviction relief. Furthermore, the filing of the transcript is not necessary to set the appeal procedure in motion within the requisite time limit and Plaintiff's attorney could have taken proper action to inform the Supreme Court of the difficulty in locating the transcript. This lack of injury to Plaintiff would be entirely sufficient grounds for this Court to find for Defendants on the issue of liability under Count I.

However, since Plaintiff does present the important issue as to whether mere negligence of the sort involved in this case is cognizable under § 1983, we will rule on that portion of the Complaint.

■ We hold that mere negligence involving an act void of not only specific intent but intent as such, is not grounds for a § 1983 suit.

■ To better understand where on the Civil Rights spectrum in terms of intent our case lies, we must first chart out the various factual permutations possible under the Act:

1) The most readily recognizable violation of a constitutionally secured right occurs where the act is wilfully done under color of law with the specific intent to deprive a person of a Federal right. The act is consciously motivated with the intended result of violating a constitutional right. This violation is cognizable not only under 42 U.S.C. § 1983 but also under the more limited 18 U.S.C. § 242 which requires that the act be "wilfully" done. See Screws v. United States, 325 U.S. 91, 65 S.Ct. 1031, 89 L.Ed. 1495 (1945), and United States v. Classic, 313 U.S. 299, 61 S.Ct. 1031, 85 L.Ed. 1368 (1941) for the history of 18 U.S.C. § 242;

■ 2) A less easily recognizable though no less clear-cut violation of 42 U.S.C. § 1983 occurs where there is no "specific intent" to violate a constitutional right but where the *act* itself and its *result* were intended under color of law sans improper motive. Though ulterior motive is absent, the acts will "be read against the background of tort liability that makes a man responsible for the natural consequences of his actions." Monroe v. Pape, 365 U.S. 167 at 187, 81 S.Ct. 473 at 484, 5 L.Ed.2d 492 (1961). In such a case the elements of the offense are a violated constitutional right, a con-

scious act, an intended result and a result that should have been contemplated under the common law tort doctrine of foreseeability. Good faith or proper motive is no defense. See also Joseph v. Rowlen, 402 F.2d 367 (7th Cir. 1968);

■ 3) The third category constitutes cases where the act is conscious, the result is intended, improper motive is absent and constitutional right is violated but the lack of an improper motive *is* a defense. The defense of good faith would be adequate when in applying common law tort background the defendant could not be held responsible for the natural consequences of his actions. Good faith thus is a proper defense in a false arrest case where the arresting officer followed proper procedure such as warrant and probable cause and it is a defense only because it is a viable and valid one under tort law. See Pierson v. Ray, 386 U.S. 547 at 555, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967);

4) The fourth category consists of cases where there is a deprivation of a constitutional right but the act bringing about that violation was an unconscious one, a pure mistake, and the factual as well as the legal result were unintended. Thus, not only was there an absence of both improper motive and specific intent —there was no motive and no intent whatsoever since the defendant was not cognizant that the act was taking place no less the legal implications of that act;

■ 5) The fifth category includes cases where there is no violation of a constitutional right as such, there was no improper motive and the act and the result were not intended. The injury in such a case is the result of a "pure tort" rather than a constitutional tort, such as personal injury and such an action cannot be maintained under 42 U.S.C. § 1983. See Kent v. Prasse, D.C., 265 F. Supp. 673 (1967) affirmed 385 F.2d 406 (3rd Cir. 1967), where the court held that the unintentional common law tort resulting from the alleged negligent maintenance of a machine in the prison shop was not cognizable under 42 U.S.C.

§ 1983. See also United States ex rel. Gittlemacker v. Penna., 281 F.Supp. 175 (E.D.Pa.1968).

■ We maintain that 42 U.S.C. § 1983 was not meant to apply to unintentional torts where both the act is unconscious and the result unintended not only where the tort is a "pure" common law tort as in Kent v. Prasse, *supra,* but also where the result is a constitutional tort. The question of whether improper motive need be present applies only to those cases where some form of conscious intent was present.

Our case, falling in the fourth category, would therefore not be actionable under 42 U.S.C. § 1983.

■ The cases interpreting lack of specific intent cover the full spectrum of degrees of intent of the first three categories mentioned yet no cited case has found a party liable where the very *act* itself was unintended. The common thread running through all of the "improper motive", "good faith" situations from the flagrant violation of Monroe v. Pape, *supra,* to the good faith defense of Pierson v. Ray, *supra,* and the irrelevance of good faith in Joseph v. Rowlen and Whirl v. Kern, *supra,* is the fact that *the result of the act was intended* and that a certain threshold cognizance of the act being performed, albeit an innocent one, was present. Thus, in the act of falsely arresting an individual the result that the individual be arrested was undeniably intended though not falsely such as in *Rowlen* and *Pierson;* in the act of falsely imprisoning the result that the prisoner remain imprisoned was intended though not falsely such as in *Kern.* That a certain result be *intended* and that the act mounted to accomplish that result must be a *conscious* one is therefore a basic requisite for a § 1983 suit. Simply stated, this means that although specific intent need not be present *some* intent must be involved.

Our case falls within the fourth aforementioned category since the Defendants did not intend to mail the transcript to the mother of another prisoner, were

**390**

not conscious of doing the act and did not intend the result. An instance, borrowing some of the facts of our case, that might more properly have been analogous to the false arrest cases, (as unlikely as such a situation coming about might be) would result if Defendants had *intentionally* mailed Plaintiff's transcript to a wrong address thinking that it was perfectly legal to do so and that such an act was not a denial of a prisoner's access to the courts. In such a case the good faith protestations of the prison officials would be no defense to a § 1983 action given the fact that the *result* was intended—the mailing to an incorrect address—and the act was conscious.

We might also add that Whirl v. Kern, *supra*, where a prisoner sued a sheriff for keeping him in prison for nine months after the dismissal of charges against him, might have been proper precedent in this case had the prisoner sued the *District Clerk* for failing to inform the sheriff that the charges had been dismissed. Had that been the nature of the suit and had the court held that the *Clerk's* inadvertence in not properly informing the sheriff of the dismissal was cognizable under § 1983, though not dispositive of the issue, might have made us more prone to adopt that case as precedent. As the case stands, however, the sheriff's act in *Kern* of keeping the plaintiff in prison was both conscious and intended as opposed to the totally unconscious act in our case.

 We, therefore, reach the conclusion that the pronouncement of Monroe v. Pape that the Civil Rights Act should be read "against the background of tort liability that makes a man responsible for the natural consequences of his actions" 365 U.S. at 187, 81 S.Ct. at 484, 5 L.Ed.2d 492 was never meant to superimpose the entire tort common law over the Act. Rather it was meant to apply only to *conscious intended* acts even under circumstances where there is a total innocence as to the constitutionally violative nature of the act and result except where that innocence would be a

common law tort defense such as good faith in false arrest cases. Where, however, the act is one totally devoid of any intent or consciousness and is pure accident there is no action under § 1983. The very language of Monroe v. Pape as to the responsibility of a man for the natural consequences of his actions implies some minimum degree of knowledge that the action is taking place.

Plaintiff's attempt to apply the tort law en masse to § 1983 therefore cannot meet with success. To do so would convert every minor mistake, especially in the milieu of the prison, into a violation of § 1983. To hold prison officials to such a high standard of strict liability would impose such an impossible burden as to render prisons totally inoperable.

■ As to the issue of liability under Count I we therefore find that Defendants' error in the mailing of the transcript is not an action cognizable under 42 U.S.C. § 1983.