**V. Stevens KITE, Plaintiff-Appellant,**

v.

**Clarence M. KELLEY, Director, Federal Bureau of Investigation, et al., Defendants-Appellees.**

**No. 75–1811.**

United States Court of Appeals, Tenth Circuit.

Nov. 29, 1976.

Argued and Submitted Sept. 24, 1976.

Decided Nov. 29, 1976.

---

Jerome S. Malman, Denver, Colo., for plaintiff-appellant.

Jerre W. Dixon, Denver, Colo. (James L. Treece, U. S. Atty., Gary M. Jackson, Asst. U. S. Atty., Richard L. Thornburgh, Asst. Atty. Gen., Denver, Colo., George W. Calhoun and David H. White, Dept. of Justice, Washington, D. C., on the brief), for defendants-appellees.

Before SETH, BREITENSTEIN and HOLLOWAY, Circuit Judges.

BREITENSTEIN, Circuit Judge.

This is an action against various federal officials wherein plaintiff-appellant Kite claims that agents of the Federal Bureau of Investigation violated certain of his constitutional rights by giving his employer information relating to his arrest record. Jurisdiction is asserted under 28 U.S.C. §§ 1331 and 1343. The district court directed a verdict in favor of the defendants on questions of liability and damage. We affirm.

Plaintiff was a member of certain radical groups while a student at the University of Oregon. He moved to Denver, Colorado, and in 1971 secured employment with Samsonite Corporation. In October, 1971, the Denver Office of the FBI was requested by another FBI office to investigate Kite's activities in Colorado. FBI agent Fore obtained information from Samsonite regarding plaintiff's employment.

In May, 1972, FBI agent Adsit received from Samsonite a request for assistance in its investigation of plaintiff. Adsit, in violation of FBI regulations, told Samsonite that plaintiff had been arrested in Oregon. Samsonite later discharged plaintiff for having made false statements in his employment application. These statements related to his arrest record and to his education. Samsonite furnished agent Adsit with its security file on plaintiff.

Plaintiff later secured a job at Cutler-Hammer, Inc. FBI agent Hamilton made inquiry about plaintiff at Cutler-Hammer. Plaintiff voluntarily left his job there when he was assigned to a night shift. Plaintiff then went to work for Stanley Aviation Corporation. Again, inquiry about plaintiff was made by FBI agent Hamilton. Stanley Aviation discharged plaintiff because of a false statement on his employment application.

Plaintiff's complaint alleges that the FBI harassed, investigated, and intimidated him in violation of rights guaranteed by the First, Fourth, Fifth and Ninth Amendments to the United States Constitution.

Plaintiff sued Saxbe as Attorney General of the United States, and Kelley as the

Director of the Federal Bureau of Investigation, in their official capacities. Levi, the present Attorney General, was substituted for Saxbe. Defendant Newpher was Special Agent in Charge, SAC, of the Denver FBI office at the time when agents Fore and Adsit were investigating plaintiff. Defendant Giovanetti was the SAC when agent Hamilton made his investigations. Agents Fore, Adsit, and Hamilton were not joined as defendants. Plaintiff named Samsonite, Cutler-Hammer, and Stanley Aviation as defendants. They were each dismissed on motion and are not parties to this appeal.

Neither Fore nor Hamilton made any disclosure of plaintiff's activities or record. The plaintiff's case rests on the disclosure by agent Adsit to a Samsonite security officer of plaintiff's Oregon arrest. The question is whether the defendants, officers superior to Adsit, may be held monetarily liable for the misconduct of their subordinate Adsit.

At the close of the plaintiff's case, the district court directed a verdict in the favor of the defendants on the question of monetary liability. The court ordered that documents provided by Samsonite to the FBI be expunged from the FBI files and enjoined all defendants from disseminating, disclosing, or publishing information concerning the plaintiff except as authorized by federal statute or executive order or by a court of competent jurisdiction. The Samsonite documents were expunged. No appeal has been taken from the injunctive provisions of the order. Our concern is with the grant of the motion for a directed verdict on the question of monetary liability. The evidence must be considered in the light most favorable to the party opposing the motion and, when so taken, must be such as would require the trial court to set aside a verdict for the opposing party. *Toland v. Technicolor, Inc.,* 10 Cir., 467 F.2d 1045, 1046–1047 and cases there cited.

The applicability of respondeat superior to civil rights cases has produced much contrariety in the federal courts. A number of circuits have found the doctrine inapplicable to civil rights cases. See *Sebastian v. United States,* 8 Cir., 531 F.2d 900, 904 (action under §§ 1983, 1985, and 1986); *Adams v. Pate,* 7 Cir., 445 F.2d 105, 107 n. 2 (action under §§ 1983 and 1985); *Williams v. Vincent,* 2 Cir., 508 F.2d 541, 546 (action under §§ 1981, 1983, and 1985); and *Dunham v. Crosby,* 1 Cir., 435 F.2d 1177, 1179–1180 (action under § 1983).

Decisions holding that respondeat superior is applicable to civil rights suits include *Carter v. Estelle,* 5 Cir., 519 F.2d 1136 (action under § 1983), and *Carter v. Carlson,* 144 U.S.App.D.C. 388, 447 F.2d 358, 370 (action under § 1983), reversed on other grounds sub nom. *District of Columbia v. Carter,* 409 U.S. 418, 93 S.Ct. 602, 34 L.Ed.2d 613. In *Hesselgesser v. Reilly,* 9 Cir., 440 F.2d 901, 903–904, *Tuley v. Heyd,* 5 Cir., 482 F.2d 590, 594, and *Scott v. Vandiver,* 5 Cir., 476 F.2d 238, 241–243, the courts held that vicarious liability of a state or local officer is dependent on state law in a § 1983 action. In the Tenth Circuit some uncertainty exists. Compare *Dewell v. Lawson,* 10 Cir., 489 F.2d 877, 881–883, with *Draeger v. Grand Central, Inc.,* 10 Cir., 504 F.2d 142, 145–146.

The problem of the application of respondeat superior to § 1331 cases has come to the fore since *City of Kenosha v. Bruno,* 412 U.S. 507, 93 S.Ct. 2222, 37 L.Ed.2d 109, which held that municipalities are immune from § 1983 suits. That decision discusses the possible liability of municipalities under § 1331. Ibid. at 514. The divergence of opinion on the applicability of respondeat superior to § 1331 suits has surfaced in the Northern District of Illinois. *Gresham v. City of Chicago,* N.D.Ill., 405 F.Supp. 410, and *Jamison v. McCurrie,* N.D.Ill., 388 F.Supp. 990 hold that respondeat superior is not applicable in § 1331 suits against a city. *Collum v. Yurkovich,* N.D.Ill., 409 F.Supp. 557, and *Williams v. Brown,* 398 F.Supp. 155, hold to the contrary. *Smetanka v. Borough of Ambridge, Pennsylvania,* W.D. Pa., 378 F.Supp. 1366, 1377 refuses to apply respondeat superior to a § 1331 suit.

The respondeat superior doctrine was discussed in *Rizzo v. Goode,* 423 U.S. 362, 96

S.Ct. 598, 46 L.Ed.2d 561, a suit under § 1983. There the plaintiff sued the Mayor, the Police Commissioner, the City Managing Director of Philadelphia and others because of alleged unconstitutional acts of various non-party police officers. The district court granted relief and the court of appeals affirmed. See *Goode v. Rizzo*, 3 Cir., 506 F.2d 542. The Supreme Court reversed. In its opinion the Court said, 423 U.S. at 371, 96 S.Ct. at 604:

"As the facts developed, there was no affirmative link between the occurrence of the various incidents of police misconduct and the adoption of any plan or policy by petitioners—express or otherwise—showing their authorization or approval of such misconduct."

The "affirmative link" requirement of Rizzo means to us that before a superior may be held for acts of an inferior, the superior, expressly or otherwise, must have participated or acquiesced in the constitutional deprivations of which complaint is made. See *Delaney v. Dias*, D.Mass., 415 F.Supp. 1351, 1354–1355.

The issue is complicated by the fact that in civil rights suits against public employees, the superior and the inferior are often employees of the same entity. Respondeat superior operates against the employer or principal. It has been suggested that respondeat superior does not subject a superior officer to vicarious liability for the acts of his subordinate when both are servants of the same master. See *Carter v. Carlson*, 144 U.S.App.D.C. 388, 447 F.2d at 370 n.39.

In the case at bar the defendants are all officers or employees of the United States. Plaintiff seeks monetary relief from them for violation of 42 U.S.C. § 1983 which proscribes deprivation of civil rights under color of state law. Section 1983 has no application to federal officers acting pursuant to federal law. *Soldevila v. Secretary of Agriculture of U.S.*, 1 Cir., 512 F.2d 427, 429. See also *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388, 398 n.1, 91 S.Ct. 1999, 29 L.Ed.2d 619. No recovery may be had from any of the defendants under § 1983.

The other claim is for deprivation of constitutional rights with jurisdiction based on 28 U.S.C. § 1331 relating to federal questions. The complaint alleges that the defendants violated plaintiff's constitutional rights. Under *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619, jurisdiction lies under § 1331. In *Bivens* the action was against the officers who assertedly violated the plaintiff's constitutional rights. Here the agents who are alleged to have deprived the plaintiff of constitutional rights are not made defendants. Recovery is sought from their superiors on the ground of vicarious liability. The majority opinion in *Bivens* says nothing about respondeat superior.

The question then is whether a federal officer may be held monetarily liable for acts of his subordinates resulting in the deprivation of constitutional rights. The actions of agents Fore and Hamilton in making inquiry of employers with regard to employment of plaintiff violated no right of plaintiff. Such routine investigations are well within the duties and responsibilities of the FBI. The case rests on the disclosure by agent Adsit to the security officer of Samsonite that plaintiff had an arrest record. This disclosure violated FBI regulations. Counsel for plaintiff does not specify what constitutional right of plaintiff was infringed. Instead, he relies on the penumbra of rights found in the first ten Amendments.

In the circumstances we deem it unnecessary to explore what constitutional right, if any, was infringed. On the assumption that he was deprived of some constitutional right, he nevertheless may not recover from any of the defendants on the doctrine of respondeat superior. The record is devoid of any connection of Attorney General Levi, FBI Director Kelley, and SAC Giovanetti with the investigation of plaintiff. The only connection of Newpher arises from the fact that he was SAC when agent Adsit disclosed the arrest record to Samsonite.

Plaintiff urges that the superiors had knowledge of the acts of their agents be-

338

cause the reports of the agents were addressed to the SAC. The form of address conformed with FBI administrative procedures. There is no evidence that any of the defendants saw the reports. In his brief plaintiff attempts to put responsibility on the superiors because of an FBI regulation relating to termination of an investigation. We fail to find any pertinence. Agent Hamilton did recommend that the investigation be closed. In any event, the regulation is not a part of the record and we may not consider it.

Nothing in the record shows that any defendant instigated the investigation of plaintiff, directed its course, participated or acquiesced therein. There is no proof of lack of training or of declaration of wrongful policy. Indeed the disclosure by Adsit was contrary to FBI policy. In sum, plaintiff failed to establish the "affirmative link" which *Rizzo* requires. The doctrine of respondeat superior has no application to the facts here presented.

Because we hold that the defendants are not vicariously liable for monetary damages, we have no reason to consider whether the defendants are immune from suit.

When the trial court directed the verdict, it referred to the presence in the court room of Newpher and Giovanetti and to the fact that they had not been called to testify. Plaintiff argues that the statement was an impermissible speculation on the testimony which a witness might give. The point has no merit. The trial court noted what had occurred, but did not speculate or infer on what might have been the testimony of the two defendants if they had been called as witnesses.

Affirmed.