**Kyle L. SMITH and Lynne A. Smith, Plaintiffs,**

v.

**Dick HILL, Don Forsythe, Karl R. Lyman, Kenneth J. Pinegar and H. Jerry Bradshaw, Utah County Commissioners, Utah County, State of Utah, Scott M. Matheson, Governor of the State of Utah, and Utah State Commissioner of Public Safety Larry Lunnen in his public and individual capacities, Defendants.**

No. C 80-0169A.

United States District Court,
D. Utah, C. D.

March 23, 1981.

Loni F. DeLand, McRae & DeLand, Salt Lake City, Utah, for plaintiffs.

Jeffrey N. Clayton, Moyle & Draper, Salt Lake City, Utah, for defendants Hill and Forsythe.

Noall T. Wootton, Utah County Atty., Provo, Utah, for defendants Lyman, Pinegar and Bradshaw, Utah County Commissioners and Utah County.

Allen L. Larson, Snow, Christensen & Martineau, Salt Lake City, Utah, for defendants State of Utah, Scott M. Matheson, and Utah State Commissioner of Public Safety Larry Lunnen.

## AMENDED ORDER OF DISMISSAL

ALDON J. ANDERSON, Chief Judge.

This is a civil rights action brought under 42 U.S.C. § 1983.[1] At issue before the court

---

1. Section 1983 states:

   Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

   Two elements are thus necessary for recovery under section 1983:

   First, the plaintiff must prove that the defendant has deprived him of a right secured by the "Constitution and laws" of the United States. Second, the plaintiff must show that the defendant deprived him of this constitutional right "under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory." This second element requires that the plaintiff show the defendant acted "under color of law."

   *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 150, 90 S.Ct. 1598, 1604, 26 L.Ed.2d 142 (1970); *see Lessman v. McCormick*, 591 F.2d 605, 609 (10th Cir. 1979).

is a motion filed by defendants Karl R. Lyman, Kenneth J. Pinegar, and H. Jerry Bradshaw, who collectively comprise the Utah County Commission. They have moved the court for a dismissal of the action as against them individually, and as to the County. Memoranda have been filed by the respective parties to this motion. Oral argument was made before the court on December 1, 1980. The court has considered the arguments thus made and concludes that, as a matter of law, plaintiffs have not stated a claim as against the County defendants. The motion to dismiss is accordingly granted.

## FACTS

For the purposes of this motion all of the factual assertions of the second amended complaint are taken as true. *Mitchell v. King*, 537 F.2d 385, 386 (10th Cir. 1976). The claims herein arise from an incident that occurred on April 19, 1979, at 11:30 p. m. Plaintiff Kyle Smith answered a knock on the door of his residence in Orem, Utah. On opening the door he found defendant Dick Hill and a youth of 15 to 16 years of age. Hill is employed in Utah County as a deputy constable. Without identifying himself Hill told Smith that he, Smith, owed him $50. Smith inquired why and was told that it was for a traffic ticket issued to him for driving without a license. Smith then showed his driver's license. Hill stated that the fine was reduced to $45, but continued his insistence that Smith pay the fine. Hill allegedly stated that the fine should be paid immediately "or you go with me." Smith responded that he was not going anywhere, having not yet seen any identification for Hill. Smith claims that Hill then jerked open the screen door and pulled a pistol from under his jacket, which he cocked. Hill entered the house and threatened to shoot Smith. He allegedly aimed the pistol at Smith's chest at a distance of eight to ten inches and ordered Smith to put his hands on the wall. Smith asserts that he felt tremendous fear, both for his own safety and for that of his wife, Lynne Smith. He further claims that he was apprehensive over the safety of his small child who was sleeping in a crib on the opposite side of the plaster board wall at which Hill was pointing the gun.

Smith states that he asked Hill if he could put on some clothes but that he was rebuffed by Hill's saying, "Take another step and so help me I'll kill you." Lynne Smith entered the room and asked Hill his name so that she could write a check. He uncocked his gun and took a card from his wallet indicating his name to be Dick Hill. The complaint states further that he was pointing the pistol at Lynne Smith as he was giving her the card. Plaintiffs assert that he said to her, "Don't argue with cops, it's stupid and will only get you killed." Through the whole ordeal, plaintiffs claim, Hill appeared "angry, excited and not in control of his emotions." They claim further that Hill's apparent emotional state coupled with the brandishing of his weapon caused them to experience anxiety and fear for their lives. At no time during the incident was either plaintiff shown any kind of warrant or court order.

## MOTION TO DISMISS

This suit was filed nearly a year after the alleged incident. The second amended complaint names Hill as a defendant and also includes the constable under whom he worked, the individual County Commissioners for Utah County, Utah County, the State of Utah, the Governor for the State of Utah, and the Utah State Commissioner of Public Safety as defendants. The members of the Utah County Commission and Utah County seek to have the complaint dismissed as to them.

Plaintiffs claim that the Commission had a duty to supervise the hiring of deputy constables and to insure that deputy constables are properly trained for the performance of their duties. Plaintiffs allege that the Commission breached these duties, which proximately caused a deprivation of plaintiffs' civil rights. Plaintiffs claim that Utah County, by and through the County Commissioners, exhibited a custom, policy, or usage in that it was negligent in the

hiring, assigning, training, and supervision of deputy constables. Such negligence, they assert, was a direct cause of the incident complained of.

The County defendants assert that they cannot be liable under section 1983 as a matter of law. They claim that the County is not liable because the injury of which plaintiffs complain was not caused by an official custom, policy, or usage. The individual members of the County Commission argue further that they are not individually liable even if the County is because they are guaranteed legislative immunity for acts performed in a legislative capacity.

Three issues are presented: (1) whether a defendant in a supervisory position can be liable under section 1983 for failure to supervise or to train his subordinates; (2) whether an action under section 1983 can justifiably be based on conduct that is no more than merely negligent, and (3) whether, in this case, the conduct of the Utah County defendants rose to a level of culpability greater than mere negligence because of their alleged failure to train or supervise the activities of constables and deputy constables. The disposition of these issues makes it unnecessary to determine the legislative immunity issue raised by the Commissioners.

*1. The liability of a supervisor under section 1983.*

■ All the parties to the instant dispute acknowledge that under *Monell v. Department of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978),[2] a municipality—including a county—may be liable under section 1983 for constitutional deprivations just as any other "person" would be. The touchstone of the *Monell* decision, as it is applicable here, is that a municipality is not liable "unless action pursuant to official municipal policy of some nature caused a

constitutional tort." *Id.* at 691, 98 S.Ct. at 2036. Thus, the municipality is not liable under a theory of *respondeat superior* simply because it employs a tortfeasor. The language of section 1983 "plainly imposes liability on a government that, under color of some official policy, 'causes' an employee to violate another's constitutional rights." *Id.* at 692, 98 S.Ct. at 2036.

In *Rizzo v. Goode*, 423 U.S. 362, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976), the plaintiff sued the Mayor of Philadelphia, the Police Commissioner, the City Managing Director of Philadelphia and others because of alleged unconstitutional acts of various police officers who were not parties to the action. The Court, reversing the lower court's granting of relief, said that the facts failed to show an "affirmative link" between the police misconduct complained of and "the adoption of any plan or policy by [the Mayor and the Police Commissioner]—express or otherwise—showing their authorization or approval of such misconduct." *Id.* at 371, 96 S.Ct. at 604. In *Kite v. Kelley*, 546 F.2d 334 (10th Cir. 1976), the plaintiff similarly sued the Attorney General of the United States and the Director of the FBI for alleged deprivations committed by FBI agents. The Tenth Circuit held that the doctrine of *respondeat superior* was not operable in a suit brought under section 1983. The court observed that the " 'affirmative link' requirement of Rizzo means to us that before a superior may be held for acts of an inferior, the superior, expressly or otherwise, must have participated or acquiesced in the constitutional deprivations of which complaint is made." *Id.* at 337. The opinion further states that there was no proof of "lack of training or of declaration of wrongful policy." *Id.* at 338. *See Lessman v. McCormick*, 591 F.2d 605, 612 (10th Cir. 1979) ("personal participation" will have to be demonstrated).[3]

---

2. *See The Supreme Court, 1977 Term*, 92 Harv. L.Rev. 311–26 (1978); Note, *Monell v. Department of Social Services: A Supreme Court Adoption of Lower Court Exceptions*, 1979 Utah L.Rev. 251.

3. The Supreme Court, in *Monell*, hints at a similar rule of law when it says: "By our decision in *Rizzo v. Goode*, 423 U.S. 362, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976), we would appear to have decided that the mere right to control without any control or direction having been exercised and without any failure to supervise

In *McClelland v. Facteau*, 610 F.2d 693 (10th Cir. 1979), plaintiff brought a civil rights action against two police chiefs, among others, for breach of their duty to supervise police officers. The court held that a cause of action would be available under section 1983 "when the defendant was in a position of responsibility, knew or should have known of the misconduct, and yet failed to act to prevent future harm." *Id.* at 697. The language "knew or should have known" indicates that a supervisory official need not have participated actively in the deprivation. Such an official may be liable even though the extent of his participation in the illegal act was no more than acquiescence. It is reasonable to conclude that the "personal participation" language of *Lessman*, 591 F.2d at 612, was an intended emphasis on the necessity of causation, rather than as a stated requirement that a supervisory defendant be shown to have affirmatively and actively participated. Thus, the thrust of *Monell* and *Rizzo* seems to allow a plaintiff to establish municipal liability by proving either "(a) an official policy or custom which results in constitutional violations or (b) conduct by officials in authority evincing implicit authorization or approval or acquiescence in the unconstitutional conduct." *Popow v. City of Margate*, 476 F.Supp. 1237, 1245 (D.N.J.1979). A failure to train, supervise, or discipline subordinate officers—such as a constable or deputy constable—may fall into one of these categories and warrant liability under section 1983. *Id.* This is the rule followed by other courts as well. *Owens v. Haas*, 601 F.2d 1242, 1246 (2d Cir. 1979); *Sims v. Adams*, 537 F.2d 829, 832 (5th Cir. 1976); *Wright v. McMann*, 460 F.2d 126, 135 (2d Cir.), *cert. denied*, 409 U.S. 885, 93 S.Ct. 115, 34 L.Ed.2d 141 (1972); *Jones v. City of Philadelphia*, 491 F.Supp. 284, 287 (E.D.Pa. 1980); *Leite v. City of Providence*, 463 F.Supp. 585, 589–91 (D.R.I.1978); *Downs v. Department of Public Welfare*, 368 F.Supp. 454, 464 (E.D.Pa.1973).[4]

Constructive knowledge of the illegal activities of subordinates may be imputed to a supervisor where it is shown that policies existed within his department or governmental entity the implementation of which resulted in a constitutional deprivation. Proof of the acceptance or support of such policies by the supervisor makes out the acquiescence in the illegality. *Norton v. McKeon*, 444 F.Supp. 384, 387–88 (E.D. Pa.1977). Judge Lord, who authored *Norton*, had previously ruled in *Santiago v. City of Philadelphia*, 435 F.Supp. 136, 152 (E.D. Pa.1977), that where the defendant is a superior with less direct supervisory control plaintiff will have to prove specific knowledge of the misdeeds and specific evidence of approval or acquiescence in the constitutional deprivation. In other words, the less direct the supervision, the greater the degree of actual knowledge or acquiescence that needs to be shown. *See also Fialkowski v. Shapp*, 405 F.Supp. 946, 952 (E.D.Pa. 1975).

### 2. The standard of negligence required under section 1983.

Section 1983 does not specify the degree of culpability with which a wrongdoer must act in order to be liable to the person injured. It is uniformly held that actual intent to deprive another of his constitutional rights need not be shown. *Daniels.v. Van De Venter*, 382 F.2d 29, 31 (10th Cir. 1967). The issue that divides the courts is whether gross negligence must be shown or whether mere negligence on the part of the defendant will suffice. The prevailing rule seems to be, and this court agrees, that mere negligence is insufficient to find a

---

is not enough to support section 1983 liability." 436 U.S. at 694 n.58, 98 S.Ct. at 2037 n.58. Though it is not readily apparent how one can fail to exercise control and yet not fail to supervise, the Court is possibly indicating that something more than a mere failure to control will have to be shown.

4. Some courts have required a showing of active participation by the defendant supervisor. Mere knowledge of or acquiescence in the activities of subordinates was insufficient to create liability under section 1983 in two recent cases. *Coffy v. Multi-County Narcotics Bureau*, 600 F.2d 570, 580 (6th Cir. 1979); *Ford v. Breier*, 71 F.R.D. 195, 198 (E.D.Wis.1976).

defendant liable under section 1983. Though cases may arise where an opposite result would be justified this is not such a case.[5]

The Supreme Court, in *Monroe v. Pape*, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961), stated that section 1983 "should be read against the background of tort liability that makes a man responsible for the natural consequences of his actions." *Id.* at 187, 81 S.Ct. at 484. This language has not been interpreted so broadly that it allows a cause of action under section 1983 every time a plaintiff is injured tortiously by a person acting with color of authority. The Court has since observed that not every tort actionable at state law is equally valid as the basis for a cause of action under section 1983 or the fourteenth amendment. *Paul v. Davis*, 424 U.S. 693, 699–701, 96 S.Ct. 1155, 1159–1160, 47 L.Ed.2d 405 (1976). *See also Heard v. Lafourche Parish School Board*, 480 F.Supp. 231, 232 (E.D.La.1979); *Jenkins v. Meyers*, 338 F.Supp. 383, 390 (N.D.Ill. 1972), *aff'd*, 481 F.2d 1406 (7th Cir. 1973). The district court in *Jenkins* noted that the above-quoted language in *Monell* "was never meant to superimpose the entire tort common law over the Act." 338 F.Supp. at 390. Rather than being aimed at merely tortious conduct by state officers the Civil Rights Act was designed to protect against the "[m]isuse of power, possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *United States v. Classic*, 313 U.S. 299, 326, 61 S.Ct. 1031, 1043, 85 L.Ed. 1368 (1941); *see Paul v. Davis*, 424 U.S. 693, 717, 96 S.Ct. 1155, 1168, 47 L.Ed.2d 405 (1976) (Brennan, J., dissenting); *Lessman v. McCormick*, 591 F.2d at 609; *Popow v. City of Margate*, 476 F.Supp. at 1243. *See also Jenkins v. Averett*, 424 F.2d 1228, 1232 (4th Cir. 1970) ("Our concern here is with the raw abuse of power by a police officer . . . .").

In addition, section 1983 seems to have as one of its major purposes the prevention of future deprivations. The court considers that the prophylactic policy of the statute is to be emphasized more than the remunerative. It exists, as the original title of the Civil Rights Act states, "to enforce the Provisions of the Fourteenth Amendment to the Constitution of the United States." *Monroe v. Pape*, 365 U.S. at 171, 81 S.Ct. at 475. Although section 1983 accomplishes a worthy goal in providing for the compensation of victims, its intended purpose finds greater fulfillment when it prevents rather than compensates. *See Bonner v. Coughlin*, 545 F.2d 565, 568 (7th Cir. 1976) (en banc), *cert. denied*, 435 U.S. 932, 98 S.Ct. 1507, 55 L.Ed.2d 529 (1978); *Miller v. Smith*, 431 F.Supp. 821, 826 (N.D.Tex.1977), *rev'd on other grounds*, 625 F.2d 43 (5th Cir. 1980).

For this reason it is questionable whether simple negligence on the part of a defendant in a section 1983 suit could ever give rise to liability thereunder. A majority of courts have so held.[6] Others, however,

---

5. The Supreme Court has, on two occasions, granted certiorari for the purpose of addressing the question whether simple negligence is actionable under section 1983. *Baker v. McCollan*, 443 U.S. 137, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979); *Procunier v. Navarette*, 434 U.S. 555, 98 S.Ct. 855, 55 L.Ed.2d 24 (1978). In both cases, however, the Court deferred consideration of the issue. In *Baker* Justice Rehnquist, speaking for the majority, stated:

Having been around this track once before in *Procunier, supra*, we have come to the conclusion that the question whether an allegation of simple negligence is sufficient to state a cause of action under § 1983 is more elusive than it appears at first blush. It may well not be susceptible to a uniform answer across the entire spectrum of conceivable constitutional violations which might be the subject of a § 1983 action.

*Id.* at 139–40, 99 S.Ct. at 2692. This dictum carries the implication that different constitutional violations may require different degrees of culpability. *See Popow v. City of Margate*, 476 F.Supp. 1237, 1244 & n.4 (D.N.J.1979).

6. *McClelland v. Facteau*, 610 F.2d 693, 696 (10th Cir. 1979); *Owens v. Haas*, 601 F.2d 1242, 1246 (2d Cir. 1979); *White v. Rochford*, 592 F.2d 381, 385 (7th Cir. 1979); *McDonald v. Illinois*, 557 F.2d 596, 601 (7th Cir.), *cert. denied*, 434 U.S. 966, 98 S.Ct. 508, 54 L.Ed.2d 453 (1977); *Bonner v. Coughlin*, 545 F.2d 565, 567–69 (7th Cir. 1976) (en banc), *cert. denied*, 435 U.S. 932, 98 S.Ct. 1507, 55 L.Ed.2d 529 (1978); *Thomas v. Pate*, 516 F.2d 889, 891 n.2 (7th Cir.), *cert. denied*, 423 U.S. 877, 96 S.Ct. 149, 46 L.Ed.2d 110 (1975); *Williams v. Vincent*, 508

have found that mere negligence may be sufficient.[7]

In the present case the county defendants are charged with failure to train and supervise the constable and his deputy in the performance of their duties. Plaintiffs do not plead that this failure was in any way a conscious effort to deprive plaintiffs of their rights. Rather they assert variously that these particular defendants were negligent or grossly negligent in failing to insure the proper training and supervision of the constable and the deputy.

The issue thus presented focuses on the minimum degree of culpability that a defendant charged with the supervision or training of subordinate officers must have before he can be liable under section 1983. Clearly the language of the statute does not, on its face, precondition a finding of liability on a showing of defendant's mental state; it seems to the court, however, that the purposes of the statute do not justify the assessment of monetary liability against a defendant in a supervisory capacity for mere negligence or inadvertence in failing to supervise or to train.[8] This is considering that a primary purpose of the Civil Rights Act is to deter future violations. In *Bonner v. Coughlin*, the Seventh Circuit, sitting en banc, stated:

> Neither the language of the statute nor its history shows that Congress was providing a federal remedy for damages caused by the simple negligence of a state employee. In enacting the Civil Rights Act, Congress was obviously intending to provide a deterrent for the type of conduct proscribed. If an officer intentionally causes a property loss, a remedy under Section 1983 might deter similar mis-

---

F.2d 541, 546 n.11 (2d Cir. 1974); *Page v. Sharpe*, 487 F.2d 567, 569 (1st Cir. 1973); *Brown v. United States*, 486 F.2d 284, 287 (8th Cir. 1973); *Williams v. Field*, 416 F.2d 483, 485 (9th Cir. 1969), *cert. denied*, 397 U.S. 1016, 90 S.Ct. 1252, 25 L.Ed.2d 431 (1970); *Jones v. City of Philadelphia*, 491 F.Supp. 284, 287 (E.D.Pa. 1980); *Heard v. Lafourche Parish School Board*, 480 F.Supp. 231, 232 (E.D.La.1979); *Rogers v. Okin*, 478 F.Supp. 1342, 1381–82 (D.Mass.1979); *Loopman v. Hurley*, 475 F.Supp. 98, 99 (D.N.H.1979); *Leite v. City of Providence*, 463 F.Supp. 585, 588–91 (D.R.I. 1978); *Snow v. Winston*, 447 F.Supp. 883, 885 (W.D.La.1978); *Schweiker v. Gordon*, 442 F.Supp. 1134, 1138–39 (E.D.Pa.1977); *Jones v. McElroy*, 429 F.Supp. 848, 861-63 (E.D.Pa. 1977); *Mullins v. City of River Rouge*, 338 F.Supp. 26, 29 (E.D.Mich.1972); *Scott v. Dollahite*, 54 F.R.D. 430, 434–35 (N.D.Miss.1972); *Jenkins v. Meyers*, 338 F.Supp. 383, 387–90 (N.D.Ill.1972), *aff'd*, 481 F.2d 1406 (7th Cir. 1973).

The district court in *Jenkins v. Meyers* observed that section 1983 would not apply where a constitutional deprivation results from an unconscious act the legal and factual results of which were unintended. Citing the "natural consequences" language of *Monroe*, the court concluded that the statute "was meant to apply only to *conscious intended* acts even under circumstances where there is a total innocence as to the constitutionally violative nature of the act and result .... Where, however, the act is one totally devoid of any intent or consciousness and is pure accident, there is no action under § 1983." *Id.* at 390.

7. *Navarette v. Enomoto*, 536 F.2d 277, 282 (9th Cir. 1976), *rev'd on other grounds sub nom.*

*Procunier v. Navarette*, 434 U.S. 555, 98 S.Ct. 855, 55 L.Ed.2d 24 (1978); *Byrd v. Brishke*, 466 F.2d 6, 10 (7th Cir. 1972); *Howell v. Cataldi*, 464 F.2d 272, 279 (3d Cir. 1972); *Roberts v. Williams*, 456 F.2d 819, 826–27 (5th Cir. 1971), *cert. denied*, 404 U.S. 866, 92 S.Ct. 83, 30 L.Ed.2d 110 (1972); *Puckett v. Cox*, 456 F.2d 233, 235 (6th Cir. 1972); *McCray v. Maryland*, 456 F.2d 1, 5 (4th Cir. 1968); *Whirl v. Kern*, 407 F.2d 781, 788–89 (5th Cir. 1968), *cert. denied*, 396 U.S. 901, 90 S.Ct. 210, 24 L.Ed.2d 177 (1969); *Carter v. Carlson*, 447 F.2d 358, 365 & n.20 (D.C.Cir.1971), *rev'd on other grounds sub nom. District of Columbia v. Carter*, 409 U.S. 418, 93 S.Ct. 602, 34 L.Ed.2d 613 (1973); *Norton v. McKeon*, 444 F.Supp. 384, 387 (E.D.Pa. 1977), *aff'd*, 601 F.2d 575 (3d Cir. 1979); *Culp v. Devlin*, 437 F.Supp. 20, 22 (E.D.Pa.1977).

Several courts have intimated that the degree of negligent culpability required under section 1983 would depend on the nature of the constitutional violation alleged. *Popow v. City of Margate*, 476 F.Supp. at 1243–44 & n.4; *Santiago v. City of Philadelphia*, 435 F.Supp. at 150–51. The *Popow* court indicated that where the only constitutional provision allegedly violated is the due process clause of the fourteenth amendment the degree of culpability must exceed negligence and amount to gross negligence or recklessness. 476 F.Supp. at 1244. This seems consistent with the Supreme Court's statement in *Baker*. See note 5, *supra*.

8. *But see Carter v. Carlson*, 447 F.2d at 365 & n.20; *Norton v. McKeon*, 444 F.Supp. at 387; *Santiago v. City of Philadelphia*, 435 F.Supp. at 152.

conduct. On the other hand, extending Section 1983 to cases of simple negligence would not deter future inadvertence as much as in the case of intentional or reckless conduct. Consequently, the majority of Circuits hold that mere negligence does not state a claim under Section 1983. Otherwise the federal courts would be inundated with state tort cases in the absence of Congressional intent to widen federal jurisdiction so drastically.

545 F.2d at 568 (footnote omitted).

While the Tenth Circuit has not held expressly that mere negligence is not actionable under section 1983, it has indicated that a higher standard may be required where the charge is that a defendant failed to supervise properly. In *McClelland v. Facteau*, 610 F.2d 693 (10th Cir. 1979), suit was brought against two police chiefs for the alleged breach of their duty to train and supervise the subordinate officers who had committed a constitutional deprivation. The court stated that, although it is not clear what standard of negligence is required, the good faith immunity approved in *Wood v. Strickland*, 420 U.S. 308, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975), arguable "is a recognition that something more than ordinary negligence is required of supervisory personnel." 610 F.2d at 696. *See also Bonner v. Coughlin*, 545 F.2d at 568 (making a similar analogy to *Wood v. Strickland*).

Plaintiffs rely heavily on *Owens v. Haas*, 601 F.2d 1242 (2d Cir. 1979), as support for their contention that a failure to train or supervise on the part of defendants may constitute a sufficient causal connection with the injury upon which liability may attach. The *Owens* decision, however, also specifies that the degree of negligence required to be shown by plaintiff is higher than mere negligence. The court observed: "However, the county could be held liable if the failure to supervise or the lack of a proper training program was so severe as to reach the level of 'gross negligence' or 'deliberate indifference' to the deprivation of the plaintiff's constitutional rights." *Id.* at 1246.

Similarly, in *Leite v. City of Providence*, 463 F.Supp. at 590, 591, the court stated:

Instead of simply a negligent failure to supervise, the supervising official must have participated in some way in the alleged constitutional deprivation or acted in such a way as to exhibit a "deliberate indifference" to the deprivation of the plaintiff's constitutional rights.

. . . .

Oversights in the training process or simple negligence in some of the training procedures will not give rise to section 1983 liability; instead, the training must be nonexistent or reckless, or grossly, palpably, and culpably negligent. The plaintiff in this case does not allege the requisite intentional conduct, or recklessness, or gross negligence necessary to state a claim against a municipality under section 1983. Aside from plaintiff's respondeat superior claims, he only alleges that the city was negligent in its training and hiring of the police force. Such allegations of simple negligence do not state a claim under section 1983. To distinguish between negligence and "gross negligence" is not to indulge in technicalities. There is a clear and significant difference between these two standards; one requires only a showing of unreasonableness while the other demands evidence of near recklessness or shockingly unjustified and unreasonable action.

463 F.Supp. 585, 590–91 (D.R.I.1978). *See also McDonald v. Illinois*, 557 F.2d 596, 601 (7th Cir. 1977); *Jones v. City of Philadelphia*, 491 F.Supp. 284, 287 (E.D.Pa.1980); *Popow v. City of Margate*, 476 F.Supp. at 1243–44; *Snow v. Winston*, 447 F.Supp. 883, 885 (W.D.La.1978); *Schwieker v. Gordon*, 442 F.Supp. 1134, 1138–39 (E.D.Pa.1977); *Jones v. McElroy*, 429 F.Supp. 848, 861–63 (E.D.Pa.1977).

█ It is sound policy to require a showing that a defendant's conduct be reprehensible at least to the degree of gross negligence or deliberate indifference to fundamental rights before liability under section 1983 may attach. There are competent state courts in which a tort claim based on simple negligence may be heard. Though a

constitutional violation may have resulted from the chain of causation put into motion by the failure of a supervising official to train a constable over whom he had charge, liability should not attach unless that failure was more than merely negligent. The intent of the Civil Rights Act would not be satisfied by allowing recovery against a supervising official for his inadvertence. Section 1983 allows recovery against one who puts into motion a chain of causation that ultimately results in a deprivation. The more remote the actor is from the result, the greater must be his intent in order for him to be liable under the Act. *See Santiago v. City of Philadelphia*, 435 F.Supp. at 152. In the present case, the defendant County and its Commissioners are charged with causing plaintiffs' injuries by virtue of their consenting to the hiring of an untrained person as deputy constable, and because of their failure to effect a proper supervisory and training program for constables and deputy constables. The court considers that the remoteness of these County defendants from the actual injury complained of justifies a requirement that their actions be shown to be grossly negligent before liability attaches.

■ The court understands "gross negligence" to imply an extreme departure from the ordinary standard of care characterized by conscious indifference to or reckless disregard of the rights of others, *Owens v. Haas*, 601 F.2d at 1246; "callous indifference" to the predictable consequences of one's behavior, *Williams v. Vincent*, 508 F.2d at 546 n.11; or "wanton conduct," *Jenkins v. Averett*, 424 F.2d at 1232. As the court in *Leite* noted, a grossly negligent failure to train must be such that "future police misconduct is almost inevitable." Gross negligence requires evidence of "near recklessness or shockingly unjustified and unreasonable action." 463 F.Supp. at 591.

*3. The negligence of the County defendants.*

It is not readily apparent from the complaint whether plaintiffs are pleading that these defendants were merely negligent or whether they were guilty of gross negligence. Paragraph 99 of the second amended complaint states that the members of the County Commission were grossly negligent, while paragraph 100 refers only to their "negligence." Paragraph 103 pleads that Utah County had a policy of "negligent" hiring, assignment, and retention of deputy constables. That paragraph further alleges that the "negligent failure" of the County to train and supervise deputy constables resulted in the deprivation of which plaintiffs complain. Plaintiffs appear to be relying on both simple and gross negligence. They state in their Memorandum in Opposition, for example: "There is evidence that Utah County has been negligent, perhaps grossly negligent" in providing training and supervision. *Id.* at 8. For the purposes of this motion the court will assume that plaintiffs intended to plead that the County defendants were grossly negligent. To the court's view the case against the County defendants will stand or fall depending on whether their conduct constituted gross or simple negligence.

■ Plaintiffs allege that part of the culpability of the County and its Commissioners lies in their wrongful consent to the hiring of Hill as a deputy constable, and in their failure to train and supervise him in the performance of his duties. Utah law provides: "Every county, precinct or district officer except a county commissioner or a judicial officer, may, by and with the consent of the board of county commissioners, appoint as many deputies and assistants as may be necessary for the prompt and faithful discharge of the duties of his office. . . ." Utah Code Ann. § 17–16–7 (Supp.1979). Plaintiffs urge that this provision requires that the Commission give its consent as to the hiring of individual deputies. The court, however, interprets it as requiring that the consent of the Commission be given as to the *number* of deputies hired, and not to each individual so hired. Even if plaintiffs' contention were correct the court is not persuaded that the mere giving of consent for the hiring of a constable could ever rise to the level of gross

negligence or a callous indifference to plaintiffs' rights.

Section 17–5–19 describes the extent of the supervisory role of the County Commission over constables and other County officers:

They *may supervise* the official conduct of all county officers and officers of all precincts, districts and other subdivisions of the county (except municipal corporations); see that they faithfully perform their duties, direct prosecutions for delinquencies, and when necessary require them to renew their official bonds, make reports and present their books and accounts for inspection.

*Id.* § 17–5–19 (1973) (emphasis added). It is important to note that the words "may supervise" indicate that the Commission has no affirmative duty to supervise, but that it is merely discretionary. The above statute further reveals that the Commission's supervisory power does not extend to deputy constables. The Commission can only supervise the "officers of all precincts." Section 17–16–5 describes the officers of a precinct as "one justice of the peace and one constable." These statutory passages indicate that the Commission has discretion to supervise the conduct of a county constable, but not his deputy. Apparently, the person solely responsible for the supervision of a deputy constable is the constable himself. Hence, a constable is liable for all the official acts of a deputy. *Id.* 17–16–7 (Supp. 1979).

■ Plaintiffs assert that the defendant County Commissioners had a duty, laid upon them by sections 17–5–19 and 17–16–7, to supervise the constable in his own supervision and training of the deputy constable. They claim that these two sections read together show clearly "that broad supervisory power exists in the hands of the defendant Commissioners over County precinct officers, in this case constables." Plaintiffs' Memorandum in Opposition, at 16. The court is persuaded that, although the statutes in question vest the Commission with power to supervise the conduct of constables, they do not require that that

power be exercised. Consequently, it cannot be said that the Commission had a duty to supervise Constable Forsythe in this case. If there was no duty there could have been no breach. At the very most, the Commission could only have been guilty of mere negligence, or inadvertence, in failing to exercise its discretionary power over Constable Forsythe. In any event, their failure could not have risen to the kind of intentional disregard or abuse of power that the Civil Rights Act was designed to prevent. In *Byrd v. Brishke*, 466 F.2d 6 (7th Cir. 1972), the court stated that a defendant in a section 1983 action may be liable for having omitted to act only where there was an affirmative duty to act. His omission is actionable only if unreasonable in light of the circumstances. *Id.* at 10.

The court holds that the individual members of the Commission, and hence the County itself, were sufficiently removed from the conduct of Deputy Constable Hill that they cannot be liable under section 1983. The court is of the opinion that, as a matter of law, the Commission could not have possibly acted in a manner that could be characterized as gross negligence—deliberate indifference or reckless disregard of plaintiffs' rights. The cases cited by plaintiffs for the principle that a failure to supervise or train is actionable under section 1983 are distinguishable on the basis that they involved fact situations where an official had an affirmative duty, which was left unfulfilled. Here, there was no such duty, and, hence, no possibility of liability.

Accordingly, the motion to dismiss is granted.

IT IS SO ORDERED.